**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOEL ALCALA,
                              *Petitioner,*

v.

ERIC H. HOLDER, Attorney General,
                              *Respondent.*

No. 04-70983

Agency No.
A70-786-414

JOEL ALCALA,
                              *Petitioner,*

v.

ERIC H. HOLDER, Attorney General,
                              *Respondent.*

No. 04-72295

Agency No.
A70-786-414

OPINION

On Petition for Review of an Order
of the Board of Immigration Appeals

Argued November 8, 2007
Submitted April 21, 2009
Pasadena, California

Filed April 28, 2009

Before: Kim McLane Wardlaw, Carlos T. Bea, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Bea;
Partial Concurrence and Partial Dissent by Judge Wardlaw

4949

## COUNSEL

Victor D. Nieblas P., Law Office of Victor D. Nieblas Pradis, City of Industry, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General; M. Jocelyn Lopez Wright, Assistant Director, Office of Immigration Litigation; Song E. Park, Office of Immigration Litigation, Washington, DC, for the respondent.

## OPINION

BEA, Circuit Judge:

We are called on to determine whether this court has any power to act where the government voluntarily dismisses immigration removal proceedings and has not yet obtained a final order of removal.

Alcala petitions for review of two orders of the Board of Immigration Appeals ("BIA"): (1) the BIA's order affirming the Immigration Judge's ("IJ") grant of the government's motion to dismiss removal proceedings so the government could reinstate a prior, expedited order of removal against Alcala (No. 04-70983); and (2) the BIA's order denying Alcala's motion to reopen the dismissed removal proceedings, which motion was based on ineffective assistance of counsel (No. 04-72295).

Our jurisdiction is limited to that granted by Congress. Because the authorizing statute limits our jurisdiction to review of final orders of removal—and because no such order exists in this case—we dismiss Alcala's petitions for review.

## I.

Alcala, a native and citizen of Mexico, unlawfully entered the United States on January 20, 1988, without being admitted or paroled. In 1993, Alcala filed an application for asylum;[1]

---

[1]Alcala's asylum application claimed Alcala would be persecuted for being a member of the "Mexican Labor Union" in the state of Zacatecas, Mexico. Alcala claimed he had been, and would be, beaten and threatened by members of the Judicial Police if he returned to Mexico.

at some point thereafter, he returned to Mexico.[2] On March 18, 2000, Alcala attempted to return to the United States by using a fraudulent certificate of legal permanent residency (sometimes called a "green card"). That same day, pursuant to 8 U.S.C. § 1225(b)(1), Alcala was placed in expedited removal proceedings and removed from the United States.[3] The removal order prohibited Alcala from re-entering the United States for five years. Nevertheless, Alcala again unlawfully re-entered the United States soon thereafter.

In late 2000,[4] Alcala's 1993 application for asylum was denied, and, on December 1, 2000, he was served with a Notice to Appear for removal proceedings. The notice alleged Alcala entered the United States on or about January 20, 1988, without being admitted or paroled after inspection. The notice did not mention Alcala's expedited removal on March 18, 2000, or his subsequent unlawful re-entry.

At a December 2000 hearing, Alcala, through counsel, admitted the allegations in the Notice to Appear and conceded the charge of removability. The IJ continued proceedings until July 29, 2002 to allow Alcala to file with the INS an amended application for asylum, as well as applications for withholding of removal, protection under the Convention Against Torture ("CAT"), and, in the alternative, voluntary departure. Meanwhile, in February 2001, Alcala married a United States citizen, who then filed a visa petition for an alien relative on

---

[2]The asylum application was pending when Alcala left for Mexico. For reasons not explained in the record, the government did not process Alcala's asylum application until some time in late 2000.

[3]8 U.S.C. § 1225(b)(1)(A)(i) states that if an immigration officer determines that an alien is "inadmissible under section 1182(a)(6)(C) [pertaining to misrepresentation] or 1182(a)(7) [pertaining to lack of proper documentation] of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution."

[4]The precise date does not appear in the record.

Alcala's behalf with the INS. The petition was approved. Alcala then filed with the INS an application for permission to reapply for admission to the United States after removal (Form I-212) and an application for adjustment of status (Form I-485). Once he filed the application for adjustment of status, Alcala abandoned his applications for other forms of relief before the immigration court, including asylum, withholding of removal, and CAT protection.

After several adjournments, the hearing on the merits of Alcala's application for adjustment of status was set for November 19, 2002. Alcala was present with his wife. Alcala's counsel, however, failed to appear. Instead, Alcala's counsel sent an unprepared stand-in attorney who was unfamiliar with Alcala's case. At the hearing, the government introduced into evidence two verified notices of Alcala's prior expedited removal on March 18, 2000. Alcala admitted he had been so removed on March 18, 2000.

The government then orally moved to dismiss the removal proceedings it had commenced in December 2000 so that it might reinstate Alcala's prior March 18, 2000 removal order pursuant to 8 U.S.C. § 1231(a)(5),[5] based on Alcala's prior removal on March 18, 2000, and subsequent illegal re-entry. Alcala's stand-in attorney presented no argument in opposition to the government's motion, nor did the attorney mention Alcala's pending applications for permission to reapply for admission and for adjustment of status. The IJ granted the government's motion to dismiss the proceedings without adjudicating these applications for relief.

---

[5]8 U.S.C. § 1231(a)(5) states: "If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry."

From the IJ's order of dismissal, Alcala's original counsel filed a timely appeal to the BIA, with a four-page brief in support. The brief failed to make any argument about the IJ's dismissal of the proceedings or the IJ's failure to address Alcala's pending applications for permission to reapply for admission and adjustment of status. The BIA affirmed the IJ's decision without opinion.

In our court, now represented by new counsel, Alcala timely filed a petition for review of the BIA's order affirming the IJ's dismissal of removal proceedings, which is now before us (No. 04-70983).

Alcala's new counsel also filed a motion to reopen the November 2002 removal proceedings with the BIA. Alcala claimed ineffective assistance of counsel based on his counsel's actions—mostly inactions—at his removal hearing and appeal. Alcala also contended the IJ abused his discretion by failing to adjudicate his application for adjustment of status before terminating the proceedings.

The BIA denied Alcala's motion to reopen. The BIA held that under the reinstatement statute and implementing regulation, 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 1241.8,[6] Alcala was subject to reinstatement of his prior order of removal without a hearing before an IJ. The BIA concluded prior counsel "did not provide ineffective assistance of counsel" because Alcala "had no right in the first place" to the removal proceedings and there was no legal argument counsel could have made to avoid their termination. Alcala timely filed a petition for review of this decision (No. 04-72295).

_____

[6]8 C.F.R. § 1241.8 states in relevant part: "An alien who illegally reenters the United States after having been removed, or having departed voluntarily, while under an order of exclusion, deportation, or removal shall be removed from the United States by reinstating the prior order. The alien has no right to a hearing before an immigration judge in such circumstances."

This court consolidated both petitions for review.

## II.

At the outset, it is important to be clear about what Alcala does and does not petition this court to review. Alcala has not petitioned for review of the March 18, 2000 removal order. Nor does Alcala petition for review of a BIA order denying a motion to reopen the March 18, 2000 expedited proceedings that resulted in that removal order. Alcala has filed no such motion. Instead, Alcala seeks review of—and to reopen—the November 2002 removal proceedings, proceedings that resulted in no order of removal whatsoever. The only order the November 2002 hearing produced is an order of dismissal. The carefully crafted congressional scheme governing review of decisions of the BIA limits this court's jurisdiction to the review of final orders of removal. *See* 8 U.S.C. § 1252(a);[7] *Lolong v. Gonzales*, 484 F.3d 1173, 1176 (9th Cir. 2007) (en banc) ("[O]ur jurisdiction is limited to review of final orders of removal.").[8] Because an order dismissing removal proceedings is not an order of removal, we lack jurisdiction over Alcala's petitions for review.

**[1]** That the government may, in the future, decide to reinstate the March 18, 2000 order of removal does not confer jurisdiction upon us. For reasons unknown, the government has not yet reinstated the order. As we have explained previously, "[w]hen an alien subject to removal leaves the country, the removal order is deemed to be executed. If the alien reen-

---

[7]8 U.S.C. § 1252(a)(1) states, in relevant part: "Judicial review of a final order of removal (other than an order of removal without a hearing . . . ) is governed only by chapter 158 of Title 28 [governing jurisdiction of court of appeals over petitions for review of final agency orders] . . . ."

[8]We do, however, have jurisdiction to determine our jurisdiction over Alcala's petitions for review. *See Mustanich v. Mukasey*, 518 F.3d 1084, 1087 (9th Cir. 2008) ("[W]e retain jurisdiction to review questions of law, including whether" 8 U.S.C. § 1252 precludes jurisdiction over a petition for review).

ters the country illegally, the order may not be executed against him unless it has been 'reinstated' by an authorized official." *Morales Izquierdo v. Gonzales*, 486 F.3d 484, 487 (9th Cir. 2007).

**[2]** Reinstatement of a prior order of removal is not automatic. Under 8 U.S.C. § 1231(a)(5), if the Attorney General finds an alien has reentered this country illegally after having been removed under an order of expedited removal—as is the case with Alcala—the prior order can be reinstated from its original date. However, the statute's implementing regulation "requires that before a prior order can be reinstated, the immigration officer must (1) obtain the prior order related to the alien, (2) confirm that the alien under consideration is the same alien who was previously removed or voluntarily departed, and (3) confirm that the alien unlawfully reentered the United States." *Lin v. Gonzales*, 473 F.3d 979, 983 (9th Cir. 2007) (citing 8 C.F.R. § 241.8(a)).

If these requirements are met, the immigration officer must then provide the alien with written notice of the determination and give the alien an opportunity to make a statement contesting the determination before an immigration officer. 8 C.F.R. § 241.8(b). "Only if the requirements of 8 C.F.R. § 241.8(a) and (b) have been satisfied is the alien removable under the previous order." *Lin*, 473 F.3d at 983, citing 8 C.F.R. § 241.8(c).

**[3]** Here, the government has taken no action to fulfill the requirements of 8 C.F.R. § 241.8(a) and (b); indeed, there is no evidence in the record the government has taken any steps whatsoever to reinstate the prior removal order against Alcala. When, and if, the government chooses to reinstate the March 18, 2000 expedited order of removal, Alcala may seek whatever judicial remedies are afforded to an alien in reinstatement proceedings. *See Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1137-42 (9th Cir. 2008)*; Morales-Izquierdo*, 486 F.3d at 496. Alcala may also have

remedies by means other than direct review in this court, and we express no opinion as to whether another court would have jurisdiction to review his claims for relief. But absent a final order of removal, we lack the power to entertain Alcala's claims for relief.[9]

Citing *Lin v. Gonzales*, the dissent contends we have jurisdiction over Alcala's petition because Alcala petitions for review of an order denying a motion to reopen. In *Lin*, we stated: "The denial of a motion to reopen falls within our jurisdiction over final orders of removal (not issued *in absentia*) under 8 U.S.C. § 1252(a)(1), provided that the denial has been separately appealed." 473 F.3d at 981 n.1. *Lin* is distinguishable. Petitioner Lin attempted to enter the United States, but was intercepted at the border, and placed in expedited removal proceedings. 473 F.3d at 980-81. Lin was ordered removed, and the government executed the order by removing Lin from the United States. *Id.* Lin then illegally re-entered the United States and filed an asylum application. *Id.* at 981. After the IJ denied his application for asylum, Lin filed a motion to reopen the *first* removal proceeding—the expedited

_____

[9]The dissent cites *Lolong* for the proposition that we may treat the BIA's order dismissing removal proceedings as "effectively" a final order of removal because Alcala's removal is now a "foregone conclusion." *Infra* at 4965. *Lolong* does not authorize us to do so. In *Lolong*, the IJ found Lolong removable but granted cancellation of removal. 484 F.3d at 1175. The BIA reversed the IJ's grant of cancellation of removal, and Lolong petitioned for review of the BIA's order. *Id.* Though the BIA lacked the power to issue an order of removal in the first instance, we held that we retained jurisdiction over Lolong's petition for review. *Id.* at 1177-78. But we did not rest our holding upon the conclusion that we had the power to review orders other than final orders of removal. Nor did we conclude that we have jurisdiction any time an IJ might, impliedly or otherwise, think an alien is removable. Instead, we held that the IJ's finding of removability *was* a final order of removal that was reinstated when the BIA reversed the grant of cancellation of removal. *Id.* Here, by contrast, the IJ made no finding of removability and the BIA has not undertaken the steps necessary—and prescribed by regulation—to reinstate the prior, March 18, 2000 expedited order of removal.

proceeding that had resulted in a final order of removal and its execution by his removal from the United States. *Id.* The INA does not provide an independent statutory basis for jurisdiction over a motion to reopen; instead, our jurisdiction over a motion to reopen is derivative of our jurisdiction over the underlying order of removal. *See Sarmadi v. INS*, 121 F.3d 1319, 1321 (9th Cir. 1997) ("[W]e have assumed that jurisdiction over these orders [denying a motion to reopen] is included in our jurisdiction over final orders of deportation."). Alcala, in contrast to Lin, sought before the BIA to reopen his *second* removal proceeding—a proceeding the government had voluntarily dismissed and that resulted in no order of removal. Even if this executed final order of removal *exists*, it has not been reinstated and it is not before us.[10] Thus, the dissent's "purely textual" reading of the statute is incorrect because Alcala's petition does not seek review "of a final order of removal." 8 U.S.C. § 1252(a)(1).

The dissent further contends we have jurisdiction over Alcala's petition for review of the BIA's order denying his motion to reopen simply because it raises a claim of ineffective assistance of counsel.[11] The INA does not give this court

---

[10]That Alcala does not petition for review of the prior, March 18, 2000 order of removal is unsurprising as there are formidable barriers to obtaining such review. Any appeal filed with the BIA would now be time-barred. *See* 8 U.S.C. § 1252(b)(1) (requiring appeals to be filed within 30 days of the issuance of the order of removal); 8 C.F.R. § 1003.23(b)(1) (requiring that any motion to reopen be filed within 90 days of the issuance of the order of removal). Moreover, because Alcala was removed in expedited proceedings for attempting to enter the United States using false papers, Alcala is not entitled to review in this court. *See Garcia de Rincon*, 539 F.3d at 1138-39 (explaining that 8 U.S.C. § 1252(a)(2)(A) & (e) vest jurisdiction over expedited orders of removal in the district court); *see also* 8 U.S.C. § 1225(b)(1)(A)(i) (providing that if an immigration officer finds that an alien attempted to enter the United States using false papers, the alien is removable without further review).

[11]We assume, but do not decide, that Alcala has a constitutional right to the assistance of counsel in immigration proceedings. On January 7,

free-floating jurisdiction to review any and all claimed consti-
tutional defects in a removal proceeding. This court has juris-
diction under 8 U.S.C. § 1252(a)(1)(D) over petitions for
review which raise constitutional claims or questions of law
*if, and only if, there is a final order of removal.* Section
1252(a)(1)(D) states:

> Nothing in subparagraph (B) or (C) [limiting review
> over denials of discretionary relief and removal
> orders against aliens convicted of certain criminal
> offenses], or in any other provision of this chapter
> (other than this section) which limits or eliminates
> judicial review, shall be construed as precluding
> review of constitutional claims or questions of law
> raised upon a petition for review filed with an appro-
> priate court of appeals *in accordance with this sec-
> tion.*

(emphasis added). "This section" is § 1252(a), which limits
jurisdiction to petitions for review of final orders of removal.
*Lolong*, 484 F.3d at 1176.

  Further, the INA states:

> Judicial review of all questions of law and fact,
> including *interpretation and application of constitu-
> tional and statutory provisions*, arising from any

---

2009, the Attorney General issued an opinion holding that aliens in
removal proceedings have no right to the assistance of counsel. *See Matter
of Compean*, 24 I.&N. Dec. 710 (A.G. 2009). We express no opinion on
the effect of this ruling.

  Though we do not reach the issue, we also note that the case upon
which the dissent relies to demonstrate Alcala suffered prejudice as a
result of his counsel's purportedly deficient performance—*Perez-
Gonzales v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004)—is no longer the law
in the Ninth Circuit. *See generally Duran-Gonzales v. Dep't of Homeland
Sec.*, 508 F.2d 1227 (9th Cir. 2007).

action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available *only in judicial review of a final order under this section*.

8 U.S.C. § 1252(b)(9) (emphases added).

**[4]** In *Ikenokwalu-White v. Gonzales*, the United States Court of Appeals for the Eighth Circuit held it lacked jurisdiction over a petition for review of a revocation of an immediate relative petition and of a motion to reopen proceedings on the revocation, because there was no final order of removal—even though the petitioner raised a due process claim. 495 F.3d 919, 925 (8th Cir. 2007). We agree with the Eighth Circuit:

> [W]e do not interpret the "constitutional claims or questions of law" exception contained in the REAL ID Act to be a general grant of appellate court jurisdiction over all appeals involving alleged constitutional violations by the Service regardless of the nature of the underlying proceedings; the alleged constitutional violations must result in an order of removal that is otherwise directly appealable to the courts of appeals.

*Id.* Thus, where there is no final order of removal, this court lacks jurisdiction even where a constitutional claim or question of law is raised.[12]

---

[12]*Fernandez v. Gonzales*, 439 F.3d 592 (9th Cir. 2006), is not to the contrary. In *Fernandez*, we reviewed the circumstances under which the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(B)—which deprive us of jurisdiction over denials of discretionary relief—do not apply. We noted, in dicta, that we have jurisdiction over a claim of ineffective assistance of counsel, even when such claim relates to a discretionary decision and even if resolution of such claim would require the court to weigh the factors applicable to the discretionary decision. *Id.* at 602.

The dissent accuses us of donning "willful blinders" to the 'facts' of Alcala's fate and to the prior order of removal whose reinstatement is apparently inevitable. *Infra* at 4963. We plead guilty as charged. None of those 'facts,' nor Alcala's counsel's deficient performance, can confer jurisdiction upon us. What the dissent terms a "technicality," *infra* at 4965, is nothing less than the bedrock principle that federal courts are courts of limited jurisdiction. *See Cary v. Curtis*, 44 U.S. 236, 244 (1845) ("[T]he judicial power of the United States . . . [depends] entirely upon the action of Congress, who possess the sole power of creating the tribunals (inferior to the Supreme Court) for the exercise of the judicial power, and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good. To deny this position would be to elevate the judicial over the legislative branch of the government . . . ."). As an inferior court, we are not free to expand our jurisdiction to review a decision Congress has placed outside our purview, no matter how incoherent individual judges find Congress's scheme to be and no matter how unsatisfying the Limbo-like circumstances in which an individual petitioner finds himself.

[5] We cannot and do not reach the merits of Alcala's claim the IJ abused his discretion when he terminated proceedings without adjudicating Alcala's applications for relief and Alcala's claim of ineffective assistance of counsel. As a court of appeals, our direct review of immigration proceedings is limited to review of final orders of removal. Here, there is none.

---

But because there was a final order of removal against the petitioner in *Fernandez*, the court simply had no occasion to address whether we have jurisdiction over an "independent" claim of ineffective assistance of counsel where no final order of removal exists. Indeed, *Fernandez* says nothing about either 8 U.S.C. § 1252(a)(1)(D) or 8 U.S.C. § 1252(b)(9), and the dissent's reading of *Fernandez* is contrary to the plain language of these statutory sections.

**PETITIONS DISMISSED.**[13]

WARDLAW, Circuit Judge, concurring in part and dissenting in part

I respectfully dissent from the portion of the disposition holding that we lack jurisdiction to consider Alcala's motion to reopen. Though the majority would end its inquiry at the purported lack of a "final order of removal," it cannot escape two facts: First, a final order of removal exists and will be reinstated upon termination of this appeal. Second, with effective assistance of counsel, Alcala may have succeeded in adjusting his status before the IJ. By not recognizing these facts, the majority has ensured that Alcala's potentially meritorious ineffective assistance of counsel claim can never be heard due to a technical delay that is entirely within the government's control and of its own creation.

The majority dons willful blinders to disregard the final order of removal that *already exists* for Alcala, the reinstatement of which has merely been stayed pending the outcome of this appeal. In fact, the very first order we issued after Alcala filed his petition for review before us was to grant Alcala's unopposed motion to stay removal pending review. Moreover, during the initial adjustment of status proceeding at which Alcala's counsel failed him so utterly, the following colloquy ensued between the IJ and counsel for the Immigration and Naturalization Service ("INS"):

> Q.  To the Government, is the respondent not subject to being removed under the expedited removal proceeding?

. . .

---

[13]Alcala's request to hold his case in abeyance pending issuance of the mandate in *Duran-Gonzales v. Department of Homeland Security*, 508 F.2d 1227 (9th Cir. 2007), is dismissed as moot.

[A.] He is, Your Honor. Service, unfortunately, can't make a motion to terminate right now unless I can contact my office to reinstate the prior order of removal.

[Q.] All right. How long would it take you to get that information from your office where we can appear back here in Court?

[A.] Your honor, I can do it this afternoon if I could contact my office by telephone and let you know in 10 minutes.

[Q.] All right. I will go off the record. Here's the phone.

. . .

Q. Counsel for the Government, you've had an opportunity to discuss this matter with your office?

A. Yes, Your Honor, and pursuant to the office policy and permission of my office, seek to terminate the proceedings . . . and re-instate the removal order . . . .

. . .

Q. The respondent admits that the orders do show and the documents do show that he was deported in 2000. He has reentered the United States without authorization from the Attorney General. He was subject for immediate removal without having been placed in proceedings so I will grant that order of termination.

The oral decision of the IJ also confirmed the understanding that, once the proceedings were terminated, the reinstatement,

which was stayed pending these proceedings, would go into effect: "As a result of these documents and the admissions of the respondent here in Court, [the INS] moved that these proceedings be terminated so that the [INS] could reinstate the prior removal order. That motion is granted and proceedings are hereby terminated." Thus, the removal order exists, and once the Department of Homeland Security reinstates it, it is the order by which Alcala may be deported. Inexplicably, the majority nonetheless concludes that there is no removal order.

The majority's argument that Alcala's removal is not, at this point, a foregone conclusion is unpersuasive. The majority notes that under 8 C.F.R. § 1241.8(a), an immigration officer must verify three findings prior to reinstatement: (1) the existence of the prior order of removal; (2) the identity of the individual; and (3) the individual's unlawful reentry. Again, the majority ignores the fact that all three findings have been admitted under oath by Alcala, on the record, before an IJ.[1] In Alcala's circumstances, the likelihood of reinstatement cannot be seriously questioned; at this point, it is simply a matter of time. To hold that we lack jurisdiction under these circumstances is to allow the government to circumvent review on a temporal technicality. That is precisely why, in similar contexts, we have previously exercised our jurisdiction. *See Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007) (finding jurisdiction over the BIA's reversal of a cancellation of removal because it was "effectively an order of removal"); *see also Gomez-Chavez v. Perryman*, 308 F.3d 796, 800 (7th Cir. 2002) ("[T]he agency does not have the 'final say on constitutional matters'; instead, that power rests with the courts." (quoting *Singh v. Reno*, 182 F.3d 504, 510 (7th Cir. 1999))). In sum, the majority is wrong that there is no final order of removal and improperly relies upon a technicality that will be

---

[1] 8 C.F.R. § 1241.8(a)(2) actually requires verification of identity by fingerprint, when disputed. Alcala's fingerprints are on file and in the record of this appeal.

cured as soon as the mandate issues to avoid considering the merits of Alcala's petition.²

Indeed, though the majority cites *Lin v. Gonzales*, 473 F.3d 979, 983 (9th Cir. 2007), for the proposition that reinstatement of a prior order of removal is not automatic, our decision in *Lin* should more fundamentally guide our resolution of Alcala's appeal. In *Lin*, after his first petition for asylum had been denied, Lin illegally reentered the United States and filed a second application for asylum. When this second peti-

---

²The majority characterizes *Lolong* as holding that "the IJ's finding of removability *was* a final order of removal that was reinstated when the BIA reversed the grant of cancellation of removal." *Supra*, at 4958. In *Lolong*, we held that "where the IJ has previously determined that the alien is removable but grants cancellation of removal, the BIA's decision to reverse the cancellation of removal reinstates the initial finding of removability, which, under the statute, is effectively an order of removal." 484 F.3d at 1178. The majority disregards the distinction between a finding of removability and a final order of removability. In fact, no actual order of removal had ever been entered against the petitioner in *Lolong*. *See id.* at 1176 ("Lolong conceded removability before the IJ, and, based on this concession, the IJ held that Lolong was removable but granted her application for asylum. The BIA reversed, but rather than remanding Lolong's case to the IJ for entry of an order of removal, the BIA itself granted her voluntary departure."). We concluded that "[b]ecause Lolong conceded removability and the IJ found that clear and convincing evidence supported a finding of removability, a final order of removal was entered." *Id.* at 1178. However, we arrived at this conclusion by reasoning that "[t]he IJ's grant of relief, whether in the form of asylum or withholding of removal on other grounds, necessarily requires the IJ to have already determined that the alien is deportable. Under the [Immigration and Nationality Act], this determination by the IJ constitutes an 'order of deportation.' " *Id.* at 1177 (quoting 8 U.S.C. § 1101(a)(47)). Thus, an actual "order of deportation" was never entered against Lolong. On the contrary, there was merely an implicit determination that Lolong was removable. We therefore held that a "*finding* of removability" was "*effectively* an order of removal." *Id.* at 1178 (emphasis added). Similarly, the IJ's termination of Alcala's application for adjustment of status implicitly determined that Alcala is removable. Thus, by denying Alcala's motion to reopen, the BIA effectively reinstated "a prior order of removal by eliminating the impediment to that order's enforcement." *Id.* at 1177.

tion was also denied, Lin filed a motion to reopen his initial asylum application before the IJ. The IJ denied Lin's motion, and the BIA affirmed denial, on the grounds that Lin was currently " 'subject to reinstatement of his prior removal order,' and that the IJ 'lacks jurisdiction to reopen [Lin's] prior removal order.' " *Id.* at 981. Stressing that both the BIA and the IJ had erroneously assumed that Lin's prior order of removal had been reinstated, when in fact under 8 C.F.R. § 241.8 the order of removal *had not* yet been reinstated, *id.* at 982-83, we nonetheless exercised our jurisdiction because "[w]e have jurisdiction over the affirmance of a denial of a motion to reopen under 8 U.S.C. § 1252(a)(1)." *Id.* at 981. As we explained, "[t]he denial of a motion to reopen falls within our jurisdiction over final orders of removal (not issued *in absentia*) under 8 U.S.C. § 1252(a)(1), provided that the denial has been separately appealed." *Id.* at 981 n.1. Under *Lin*, therefore, we clearly have jurisdiction over the denial of Alcala's motion to reopen, which was separately appealed.

As a purely textual matter, moreover, *Lin*'s reading of § 1252(a)(1) is correct.[3] The provision authorizes judicial review of "a final order of removal" but does not specify whether the removal order must be unexecuted. An executed order of removal does not cease to be a final order of removal by virtue of its execution. While the majority cites *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 487 (9th Cir. 2007) (en

---

[3]In its entirety, § 1252(a)(1) provides:

> General orders of removal. Judicial review of a final order of removal (other than an order of removal without a hearing pursuant to section 1225(b)(1) of this title) is governed only by chapter 158 of Title 28, except as provided in subsection (b) of this section and except that the court may not order the taking of additional evidence under section 2347(c) of Title 28.

8 U.S.C. § 1252(a)(1). Section 1225(b)(1) pertains to "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." 8 U.S.C. § 1225(b)(1). Chapter 158 of Title 28 governs the review of orders of federal agencies.

banc), for the proposition that a final order of removal may not be executed more than once without reinstatement, it does not follow from *Morales-Izquierdo* that once a final order of removal has been executed it ceases to exist. Indeed, both *Morales-Izquierdo* and *Lin* suggest a valid distinction between execution and existence: Once executed, a final order of removal continues to exist, but it may not be re-executed without reinstatement. *See id.* at 489 ("As noted, Morales cannot be removed again under the 1994 removal order unless and until it was reinstated."). In Alcala's case, therefore, a final order of removal clearly continues to exist.

We also have jurisdiction to consider Alcala's appeal because his motion to reopen contained an independent claim for ineffective assistance of counsel. *See Fernandez v. Gonzales*, 439 F.3d 592, 602-03 (9th Cir. 2006) (noting that, even in those cases where we may otherwise lack jurisdiction, "we have jurisdiction over motions to reopen regarding cases in which . . . an independent claim such as ineffective assistance of counsel is at issue"). Because Alcala's claim of ineffective assistance of counsel is a matter properly before us for review, his motion to reopen should be granted.[4]

A claim for ineffective assistance has two components: counsel's failure to perform with sufficient competence, and prejudice resulting from this failure. *Mohammed v. Gonzales*, 400 F.3d 785, 793 (9th Cir. 2005). Prejudice does not require evidence that counsel's poor performance definitively changed the result; rather, all that Alcala is required to dem-

---

[4]The majority claims that this reading of *Fernandez* conflicts with 8 U.S.C. § 1252(a)(2)(D), which safeguards our ability to review "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D). The majority's assertion is circular. It is premised upon the incorrect assumption that we lack jurisdiction over Alcala's petition for review. However, Alcala appropriately filed his petition for review "in accordance" with 8 U.S.C. § 1252, and we accordingly have jurisdiction, so there is no conflict.

onstrate is that " 'the performance of counsel was so inadequate that it *may* have affected the outcome of the proceedings.' " *Id*. at 793-94 (quoting *Ortiz v. INS*, 179 F.3d 1148, 1153 (9th Cir. 1999)).

Alcala met the first prong of an ineffective assistance of counsel claim. His lawyer displayed a complete disregard for his professional obligations. When Alcala's proceeding was called by the IJ, his attorney was not even present in the courtroom. Only by scouring the courthouse did Alcala's wife eventually track the attorney down and then attempt to drag him back to represent her husband. Rather than accompanying Mrs. Alcala back to the courtroom where his client awaited potential deportation, the lawyer sent in his stead an "appearance lawyer"—someone who had never worked on Alcala's immigration matters. Other than some minimal hemming and hawing, including admissions that he did not have key documents in his possession, the "appearance lawyer" offered little by the way of advocacy. In fact, when the IJ granted the motion to terminate the proceedings, the substitute lawyer muttered "I'd like to speak to [the original lawyer] about this and see what the—" before being cut off by the judge. "Deficient assistance" is a euphemism for what was in fact counsel's complete abandonment of his duty of representation.[5]

This deficient performance prejudiced Alcala's claim, because he had " '*plausible* grounds' " for relief. *Lin v. Ash-*

---

[5]The attachment to Alcala's I-601 application for waiver of inadmissibility states: "The Applicant, Joel Alcala, has resided in the United States for 13 years. He loves this country greatly. He has lived here since he was about 18 years old. Thus, all of his adult life has been spent in this country. His United States citizen wife loves him greatly. She would be devastated if he has to return to Mexico. Thus, if his case is not approved a United States citizen will suffer greatly." Alcala also apologized profusely for trying to enter the United States using false papers, explaining that he had only gone to Mexico to visit his parents, who were very sick. These are just a few of the facts a prepared advocate might have employed in support of his legal arguments.

*croft*, 377 F.3d 1014, 1027 (9th Cir. 2004) (quoting *United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1086 (9th Cir. 1996)). Had Alcala's counsel actually attended the hearing, he could have argued that 8 U.S.C. § 1231(a)(5) did not categorically bar review of the merits of Alcala's previous application for a discretionary waiver to apply, filed pursuant to 8 C.F.R. § 212.2(e). That this argument existed and could have affected the outcome of the proceedings is not idle speculation. We, in fact, later accepted this very argument in *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783, 784 (9th Cir. 2004), *overruled by Duran-Gonzales v. DHS*, 508 F.3d 1227 (9th Cir. 2007),[6] where Perez-Gonzalez's counsel persuaded us to reject a mechanical application of § 1231(a)(5) to automatically prevent review of a petitioner's claims. Had counsel fulfilled his duty of representation he may have anticipated this same argument based on his knowledge of the facts underlying Alcala's claim—knowledge the "appearance lawyer" plainly lacked.

That we issued our decision in *Perez-Gonzalez* two years after Alcala's hearing is immaterial. If *Perez-Gonzalez* were already established law in the Ninth Circuit, there would be no doubt that the attorney's deficient assistance changed the ultimate result of Alcala's case. That, of course, is not the test. The question, rather, is whether adequate advocacy *may* have changed the result. Obviously, Perez-Gonzalez's counsel fashioned this argument before it became established law, and a properly prepared attorney should have been able to present similar arguments at Alcala's hearing. Failure to provide effective assistance deprived Alcala of the opportunity to have this line of argument tested earlier. For that reason, Alcala

---

[6]It is immaterial that *Perez-Gonzalez* is no longer good law. In *Duran-Gonzales*, we overruled *Perez-Gonzalez* by deferring to a BIA decision issued *after* we decided *Perez-Gonzalez. See Duran-Gonzales*, 508 F.3d at 1235-42. These subsequent decisions do not alter the fact that Alcala could have prevailed on the argument we accepted in *Perez-Gonzalez* at the time of his hearing, if his counsel had not abandoned him.

suffered prejudice due to counsel's deficient performance, and his motion to reopen should be granted. Further, the BIA's conclusion that Alcala's "proceedings were terminated by application of pertinent statutes and regulations, not as the result of ineffective assistance of counsel," is clearly erroneous.

Indeed, in his motion to reopen Alcala specifically argued before the BIA that, given the existence of "two conflicting interpretations of the interplay" between the provisions governing reinstatement of removal, waiver of inadmissability, and adjustment of status, the IJ would have been able to grant the discretionary relief Alcala sought and might have done so had counsel effectively presented the arguments in Alcala's favor. In the BIA decision denying Alcala's motion to reopen, the Board strangely characterizes Alcala's "Motion To Reopen Based On Ineffective Assistance Of Counsel" as a motion to *reconsider*, then asserts that it will nonetheless construe this motion as "one to reopen." The decision also states "it is difficult to envision what [Alcala's counsel] could have argued at the hearing to avoid termination of proceedings," although Alcala's motion presented the same argument for granting discretionary relief that we later accepted. *See Perez-Gonzalez*, 379 F.3d at 795-96 ("The statutory provisions in § 241(a)(5), § 245(i), and § 212(a) should be read to harmonize with one another, rather than allowing § 241(a)(5) to render the other provisions totally or partially meaningless."). The BIA's cursory, borderline-inaccurate resolution of Alcala's motion to reopen reveals an abuse of discretion that further solidifies the appropriateness of our review. *Cf. Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005) ("We have long held that the BIA abuses its discretion when it fails to provide a reasoned explanation for its actions.").

Alcala's potentially meritorious ineffective assistance claim gives us jurisdiction over his appeal from the BIA's denial of his motion to reopen because it states a colorable due process claim that we are authorized to review under 8 U.S.C.

§ 1252(a)(2)(D). Indeed, we have on several occasions explicitly acknowledged our potential jurisdiction over appeals such as Alcala's. *See Bazua-Cota v. Gonzales*, 466 F.3d 747, 748 (9th Cir. 2006) (per curiam) ("This court retains jurisdiction over petitions for review that raise colorable constitutional claims or questions of law."); *Ramirez-Perez v. Ashcroft*, 336 F.3d 1001, 1004 (9th Cir. 2003) ("We retain jurisdiction to review constitutional claims, even when those claims address a discretionary decision."); *cf. Lopez v. Gonzales*, 210 F. App'x 690, 691 (9th Cir. 2006) (unpublished table decision) ("Byron Lopez . . . petitions for review of the [BIA's] order summarily affirming, without opinion, an [IJ's] order denying his application for adjustment of status. . . . Lopez's contention that the IJ failed to properly weigh the equities is not a colorable due process claim, and so does not confer jurisdiction." (internal citations omitted)).

If we relinquish jurisdiction here, it is likely that we relegate the egregious performance of Alcala's counsel to an unreviewable purgatory. Though we acknowledged in *Morales-Izquierdo v. Gonzales* that "individual petitioners may raise procedural [due process] defects in their particular [reinstatement] cases," it is doubtful that this review would encompass matters beyond the "narrow and mechanical determinations immigration officers must make"—determinations that have already been made here—in order to reinstate orders of removal. 486 F.3d at 496; *see also Garcia de Rincon v. DHS*, 539 F.3d 1133, 1137 (9th Cir. 2008) ("[R]eview of the reinstatement itself is limited to confirming the agency's compliance with the reinstatement regulations.").

Surely, if we have jurisdiction over constitutional claims that arise in connection with the denial of an application for adjustment of status, we may also hear appeals arising from the dismissal of such applications to accommodate the reinstatement of a prior order of removal. The hearing at which Alcala's counsel failed him so abysmally resolved conclusively whether Alcala could legally remain in the United

States. As the government would have it, however, Alcala suffered no constitutional violation because reinstatement was inevitable, but we cannot review his appeal because reinstatement appears not to have been technically finalized. This is not limbo; it is an incoherent paradox.[7] Our power to review and rectify alleged violations of fundamental rights should not be so readily discarded. In similar circumstances, facing what was "effectively an order of removal," *Lolong*, 484 F.3d at 1178, we have previously exercised our jurisdiction, and we should do so here. To require the bureaucratic initiation of reinstatement prior to our review is to "force resort to an arid ritual of meaningless form." *Staub v. City of Baxley*, 355 U.S. 313, 320 (1958) (addressing technical pleading errors in a constitutional challenge to a city ordinance). I would hold that we have jurisdiction over Alcala's appeal, and, accordingly, I dissent.

---

[7]The majority's suggestion that Alcala should have attempted to reopen the initial removal proceedings, even though a motion to reopen would have been time-barred, is equally paradoxical.