# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PEDRO GALINDO-ROMERO,

*Petitioner,*

v.

ERIC H. HOLDER Jr., Attorney
General,

*Respondent.*

No. 05-73517

Agency No.
A075-501-548

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 4, 2010—Pasadena, California

Filed September 2, 2010

Before: Richard R. Clifton and Jay S. Bybee, Circuit Judges,
and Edward R. Korman, Senior District Judge.*

Opinion by Judge Bybee

*The Honorable Edward R. Korman, Senior United States District
Judge for the Eastern District of New York, sitting by designation.

13309

## COUNSEL

Kathryn M. Davis, *Pro Bono* Appointed Counsel, Costa Mesa, California, for the petitioner.

Anthony P. Nicastro, U.S. Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

BYBEE, Circuit Judge:

Petitioner Pedro Galindo-Romero ("Galindo") seeks review of an order of the Board of Immigration Appeals ("BIA") dis-

missing his appeal of an Immigration Judge's ("IJ") decision terminating his formal removal proceedings. The BIA and IJ held that they lacked jurisdiction over Galindo's removal proceedings, including his application for cancellation of removal, because of an un-reinstated expedited removal order previously issued against Galindo. Galindo argues that the agency's decision to relinquish jurisdiction based on this expedited removal order was error. However, we conclude that we lack jurisdiction to decide the merits of Galindo's petition for review for a different reason: because the decisions of the BIA and IJ resulted in no final order of removal. Accordingly, we dismiss Galindo's petition for review.

I

Galindo is a native and citizen of Mexico. In 1987, he entered the United States illegally and settled in Texas. On March 2, 1998, the former Immigration and Naturalization Service ("INS") issued a Notice to Appear charging Galindo with removability as an alien present in the United States without having been admitted or paroled, in violation of 8 U.S.C. § 1182(a)(6)(A)(i). He was placed in formal removal proceedings and ordered to appear before an IJ.

On June 26, 1998, Galindo appeared before an IJ, admitted the factual allegations in the Notice to Appear, conceded removability, and sought cancellation of removal or, in the alternative, voluntary departure. Galindo asked for additional time to explore his eligibility for cancellation of removal, and the hearing adjourned. On February 11, 2000, Galindo filed an application for cancellation of removal. Two continuances followed, and Galindo's next hearing was set for March 26, 2001.

In April 2000, while still in removal proceedings with a pending cancellation of removal application, Galindo applied to the former INS for advance parole to leave the United States, claiming that his father, who lived in Mexico at that

time, was ill. The INS denied his advance parole application, but Galindo went to Mexico nonetheless. On April 18, 2000, Galindo attempted to reenter the United States by applying for admission at the San Ysidro, California, port of entry, explaining to the immigration officer that he had a pending application for cancellation of removal with an IJ. The immigration officer denied Galindo entry.

On April 23, 2000, Galindo again attempted to reenter the United States, this time by telling the border patrol, falsely, that he was a United States citizen. Again, an immigration officer found Galindo inadmissible and denied his admission application. In support of this denial, the immigration officer found that Galindo had falsely represented himself to be a citizen of the United States, in violation of 8 U.S.C. § 1182(a)(6)(C)(ii), and that he was not, at the time of filing his admission application, in possession of a valid entry document, in violation of 8 U.S.C. § 1182(a)(7)(A)(i)(I). Accordingly, the immigration officer issued an expedited removal order pursuant to 8 U.S.C. § 1225(b), and Galindo was summarily removed from the United States.[1]

---

[1]Expedited removal orders are very different from formal removal proceedings before an IJ. Formal removal proceedings are governed by Section 240 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229a. Jurisdiction with an IJ vests when the agency serves a Notice to Appear upon the alien charged with removability and files it with the immigration court. 8 C.F.R. § 1003.14(a). The IJ then "conduct[s] proceedings for deciding the inadmissibility or deportability of [the] alien" pursuant to 8 U.S.C. §§ 1182 and 1227(a), respectively. 8 U.S.C. § 1229a(a)(1), (2). The IJ also "ha[s] the authority to . . . determine applications" for relief under various provisions in the INA, including cancellation of removal under 8 U.S.C. § 1229b. 8 C.F.R. § 1240.1(a)(1)(ii). Section 240 mandates substantial procedural protections for aliens during formal removal proceedings. *See* 8 U.S.C. § 1229a(b).

Expedited removal orders, which are governed by Section 235 of the INA, 8 U.S.C. § 1225, are "order[s] that summarily remove[ ] an alien who attempts to gain entry into the United States by falsely claiming citizenship," *Garcia de Rincon v. DHS*, 539 F.3d 1133, 1135 (9th Cir. 2008).

At some point, Galindo again entered the United States illegally. On March 26, 2001, Galindo appeared before the IJ in his continued removal proceedings and sought to pursue his previously filed application for cancellation of removal. The government provided the IJ with the April 23, 2000, expedited removal order, which the government had not yet reinstated.[2]

---

In contrast to the procedural protections accorded aliens placed in formal removal proceedings, Section 235 empowers border agents to unilaterally and expeditiously remove an alien at the border from the United States "without further hearing or review," in the event that the agent determines that the alien is "inadmissible under section 1182(a)(6)(C) [misrepresentation] or 1182(a)(7) [lack of proper documentation]." 8 U.S.C. § 1225(b)(1)(A)(i). Moreover, there is no judicial review of expedited removal orders "except as provided in [8 U.S.C. § 1252(e)]." *Id.* § 1252(a)(2)(A)(i). In turn, § 1252(e) "only permits review of expedited removal orders in a habeas corpus petition, and even then the review is limited to an inquiry over whether: '(A) the petitioner is an alien, (B) whether the petitioner was ordered removed under [§ 1225(b)(1)], and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, [or is a refugee or has been granted non-terminated asylum].' " *Garcia de Rincon*, 539 F.3d at 1138-39 (second alteration in original) (quoting 8 U.S.C. § 1252(e)(2)).

[2]"When an alien subject to removal leaves the country, the removal order is deemed to be executed. If the alien reenters the country illegally, the order may not be executed against him unless it has been 'reinstated' by an authorized official." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 487 (9th Cir. 2007) (en banc). A prior order of removal may be reinstated "[i]f the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5). "Reinstatement of a prior order of removal is not automatic." *Alcala v. Holder*, 563 F.3d 1009, 1013 (9th Cir. 2009). Rather, the agency must comply with the requirements set forth in two statutory provisions, which we will discuss in Part II of this opinion.

Section 1231(a)(5) of Title 8 limits any review of reinstatement orders, providing that an order of reinstatement "is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at

On January 6, 2004, after several continuances, the IJ issued an oral decision terminating Galindo's removal proceedings. The IJ held that she had "ha[d] no further jurisdiction to hear [Galindo's] claim on his cancellation of removal," because the INS's April 23, 2000, expedited removal order "t[ook] preference over the Notice to Appear" and the earlier removal proceedings that had been pending before the IJ. The IJ noted that, although the INS had not yet reinstated the expedited removal order following Galindo's most recent return to the United States, "that order would still be valid and outstanding and could, in fact, be reinstated" by the INS. Although the IJ terminated removal proceedings, she did not order Galindo removed, agreeing with Galindo's counsel that she could not "give [Galindo] a removal order and deny the [cancellation of removal] application when there [was] an expedited removal order."

Galindo appealed to the BIA, challenging the IJ's termination of proceedings. The BIA dismissed, holding that Galindo's "appeal relate[d] to matters outside [its] jurisdiction" and providing three reasons for that holding: (1) under 8 C.F.R. § 235.3(b)(2)(ii), the expedited removal order itself was not subject to appellate review by the BIA; (2) under 8 U.S.C. § 1231(a)(5), Galindo was ineligible to pursue any kind of relief from removal, including cancellation of removal, because his "expedited removal order [wa]s subject to reinstatement"; and (3) the BIA "ha[d] no authority to pass judgment on the constitutionality of the Immigration and

_____

any time after the reentry." Accordingly, we have held that reinstatement "can be performed like any other ministerial enforcement action," *Morales-Izquierdo*, 486 F.3d at 491, without any hearing before an IJ, *id.* at 498. Our "review of the reinstatement . . . is limited to confirming the agency's compliance with the reinstatement regulations," in particular to "three discrete inquiries": "(1) whether the petitioner is an alien; (2) whether the petitioner was subject to a prior removal order[;] and (3) whether the petitioner re-entered illegally." *Garcia de Rincon*, 539 F.3d at 1137.

Nationality Act" or the regulations implementing it. Galindo timely appealed to this court.

## II

Galindo argues that the agency erred in terminating his formal removal proceedings. Before we may decide the merits of this argument, we must determine whether the Immigration and Nationality Act ("INA") empowers us with jurisdiction over Galindo's petition for review, an issue we determine de novo. *See Luu-Le v. INS*, 224 F.3d 911, 914 (9th Cir. 2000).[3]

**[1]** "The carefully crafted congressional scheme governing review of decisions of the BIA limits this court's jurisdiction to the review of *final orders of removal*." *Alcala v. Holder*, 563 F.3d 1009, 1013 (9th Cir. 2009) (emphasis added) (citing 8 U.S.C. § 1252(a)); *see also* 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law and fact . . . shall be available only in judicial review of a final order under this section."). "The term 'order of [removal]' means the [administrative] order . . . concluding that the alien is [removable] or ordering [removal]." 8 U.S.C. § 1101(a)(47)(A).

We lack jurisdiction to review the agency's termination of Galindo's formal removal proceedings because the decisions of the BIA and IJ resulted in no order of removal at all. The agency is unable to remove Galindo from the United States on the basis of either of these decisions, and may remove him only if the Department of Homeland Security either (1) initiates new formal removal proceedings with service of a new Notice to Appear (which it has not done); or (2) reinstates the previous expedited order of removal (which it has not done). Crucially, "[r]einstatement of a prior order of removal is not automatic." *Alcala*, 563 F.3d at 1013. Rather, the agency must

---

[3]Regardless of whether we have jurisdiction over Galindo's petition for review, we have jurisdiction to determine our own jurisdiction. *See Alcala*, 563 F.3d at 1013 n.8.

comply with the requirements set forth in two statutory provisions in order to reinstate a prior order of removal. First, the agency "must (1) obtain the prior order related to the alien, (2) confirm that the alien under consideration is the same alien who was previously removed or voluntarily departed, and (3) confirm that the alien unlawfully reentered the United States." *Lin v. Gonzales*, 473 F.3d 979, 983 (9th Cir. 2007) (citing 8 C.F.R. § 241.8(a)). Second, the agency "must provide the alien with written notice of his or her determination and give the alien an opportunity to make a statement contesting the determination." *Id.* (citing 8 C.F.R. § 241.8(b)). In this case, the agency has taken none of these actions, and thus no reinstatement—and, therefore, no order of removal—has occurred.[4]

In arguing that we have jurisdiction over his petition for review, Galindo relies entirely on our en banc decision in *Lolong v. Gonzales*, 484 F.3d 1173 (9th Cir. 2007) (en banc). In *Lolong*, an alien placed in removal proceedings conceded removability, and an IJ held that she was removable but granted her application for asylum. *Id.* at 1175. The INS appealed, and the BIA vacated the IJ's decision and denied Lolong's application for asylum, but "rather than remanding Lolong's case to the IJ for entry of an order of removal, the BIA itself granted her voluntary departure." *Id.* at 1176. Lolong petitioned for review with this court. *Id.* at 1175.

On appeal, we rejected the government's argument that, because the BIA did not enter any order of removal, and in fact "lacks statutory authority to enter orders of removal," *id.* at 1176, we lacked jurisdiction to review the BIA's order. We

---

[4]Moreover, to the extent that Galindo challenges the validity of the expedited removal order itself, we lack jurisdiction over such a claim, as 8 U.S.C. § 1252(e) permits review of expedited removal orders only in a habeas corpus petition, and even then review is strictly limited to the three discrete inquiries set forth in § 1252(e), none of which Galindo raises here. *See Garcia de Rincon*, 539 F.3d at 1138-39; *supra* n.1.

first noted that Lolong's "legal limbo"—in which she was "deprive[d] . . . of any avenue to seek review of the BIA's decision"—"may raise serious constitutional concerns because the Suspension Clause unquestionably requires some judicial intervention in deportation cases." *Id.* at 1177 (quotation marks omitted). In order to avoid serious doubts about the constitutionality of the INA, we determined that,

> where the BIA reverses an IJ's grant of relief that, by definition, follows an initial determination by the IJ that the alien is in fact removable, . . . the BIA simply reinstates the order of removal that has already been entered by the IJ and that would have taken effect but for the IJ's subsequent cancellation of removal.

*Id.* In other words, the BIA "[r]einstat[es] a prior order of removal by eliminating the impediment to that order's enforcement." *Id.* We concluded that this decision of the BIA "is effectively an order of removal" and that, therefore, we "ha[d] jurisdiction to consider [Lolong's] petition for review of the BIA's reinstatement of [the IJ's] order." *Id.* at 1178.

Galindo argues that, as in *Lolong*, he "is in the limbo state of having been subjected to an unlawful order [terminating proceedings] that would never be reviewable if the Government's jurisdiction argument prevails." He argues that

> [t]he BIA's declination of jurisdiction purports on its face not to be a final order of removal but it allows the [expedited removal order] to spring to life and allows Galindo to be summarily removed . . . despite never having the ability to seek federal court review of the lawless decision of the immigration courts. This court should find that *Lolong* controls and therefore hold that . . . the BIA's decision . . . is "effectively" a final order of removal because the "im-

pediment to the [prior] order's enforcement" has been eliminated.

Galindo's reliance on *Lolong* is misplaced. His argument is based on the faulty premise that the BIA's decision "allows the [expedited removal order] to spring to life," a proposition that is in direct conflict with our controlling decision in *Alcala*. In *Alcala*, an alien unlawfully entered the United States in 1988, applied for asylum in 1993, and thereafter returned to Mexico. 563 F.3d at 1011. "On March 18, 2000, Alcala attempted to return to the United States by using a fraudulent certificate of legal permanent residency . . . . That same day, . . . Alcala was placed in expedited removal proceedings and removed from the United States." *Id.* After execution of the removal order, Alcala again illegally entered the United States. *Id.* Unaware that Alcala had been previously removed from the United States, the INS served Alcala with a Notice to Appear in December 2000. *Id.* At his removal hearing, Alcala conceded removability and (after abandoning his previous asylum application) sought adjustment of status based on his subsequent marriage to a U.S. citizen. *See id.* at 1011-12. At some point, the government became aware of Alcala's prior expedited removal order and "moved to dismiss the removal proceedings it had commenced in December 2000 so that it might reinstate Alcala's prior March 18, 2000 [expedited] removal order." *Id.* at 1012. The IJ granted the motion and terminated proceedings "without adjudicating [Alcala's] applications for relief." *Id.* Alcala appealed to the BIA, which affirmed without opinion. *Id.* Alcala then "petition[ed] for review of the BIA's order affirming the IJ's dismissal of removal proceedings . . . that resulted in no order of removal whatsoever." *Id.* at 1012-13.

**[2]** We held that, "[b]ecause an order dismissing removal proceedings is not an order of removal, we lack[ed] jurisdiction over Alcala's petitions for review." *Id.* at 1013. "Reinstatement of a prior order of removal is not automatic" but occurs "[o]nly if the requirements of 8 C.F.R. § 241.8(a) and

(b) have been satisfied," and "there [wa]s no evidence in the record that the government ha[d] taken any steps whatsoever to reinstate the prior removal order against Alcala." *Id.* at 1013-14 (quotation marks omitted). Moreover, the fact "[t]hat the government [could], in the future, decide to reinstate the March 18, 2000 order of removal d[id] not confer jurisdiction upon us." *Id.* at 1013. We noted that "[w]hen, and if, the government cho[se] to reinstate the March 18, 2000 expedited order of removal, Alcala [could] seek whatever judicial remedies are afforded to an alien in reinstatement proceedings." *Id.* at 1014 (citing *Garcia de Rincon v. DHS*, 539 F.3d 1133, 1137-42 (9th Cir. 2008)). We concluded, however, that "where there is no final order of removal, this court lacks jurisdiction . . . no matter how unsatisfying the Limbo-like circumstances in which an individual petitioner finds himself." *Id.* at 1016.

Crucially, we rejected the argument that "*Lolong* [stands] for the proposition that we [could] treat the BIA's order dismissing removal proceedings as 'effectively' a final order of removal because Alcala's removal [wa]s . . . a 'foregone conclusion.' " *Id.* at 1014 n.9. We determined that, in *Lolong*,

> we did not rest our holding upon the conclusion that we had the power to review orders other than final orders of removal. Nor did we conclude that we have jurisdiction any time an IJ might, impliedly or otherwise, think an alien is removable. Instead, we held that the IJ's finding of removability *was* a final order of removal that was reinstated when the BIA reversed the grant of cancellation of removal. Here, by contrast, the IJ made no finding of removability and the BIA ha[d] not undertaken the steps necessary —and prescribed by regulation—to reinstate the prior, March 18, 2000 expedited order of removal.

*Id.* (citation omitted).

**[3]** Galindo's case is not meaningfully distinguishable from *Alcala*. As in *Alcala*, the termination of Galindo's removal proceedings "resulted in no order of removal whatsoever." *Id.* at 1013. "[T]here is no evidence in the record that the government has taken any steps whatsoever to reinstate the prior removal order against [Galindo]," *id.* at 1014, and "[t]hat the government may, in the future, decide to reinstate the [expedited removal order] does not confer jurisdiction on us," *id.* at 1013.

Moreover, as in *Alcala*, *Lolong* is of no help to Galindo. In *Lolong*, we held that the BIA's reversal of the IJ's grant of asylum effectively reinstated the IJ's *previous* finding of removability. *See Alcala*, 563 F.3d at 1014 n.9. But in Galindo's case, "the IJ made no finding of removability and the BIA has not undertaken the steps necessary—and prescribed by regulation—to reinstate [Galindo's] prior . . . expedited order of removal." *Id.* Until the government satisfies these requirements, no order of removal has been reinstated, and there is no "final order of removal" for us to review.**⁵**

The only difference between Galindo's case and *Alcala* is that Alcala sought relief *after* being removed pursuant to the expedited removal order, whereas Galindo had commenced formal removal proceedings and had applied for cancellation of removal *before* being subject to the expedited removal order. Galindo points out that, under 8 U.S.C. § 1231(a)(5), an alien subject to a reinstated order of removal "is not eligible

---

**⁵**We note that Galindo's case does not implicate the constitutional concerns present in *Lolong* because, even if we accepted Galindo's argument that the BIA's decision effectively reinstated the expedited removal order, this would not entitle Galindo to any kind of relief from removal. We lack jurisdiction to review a direct (non-habeas) challenge to reinstatement of an expedited removal order and, even in a habeas challenge, our review would be limited to determining whether Galindo is an alien, whether he was subject to a prior removal order, and whether he reentered illegally, none of which Galindo contests. *See Garcia de Rincon*, 539 F.3d at 1137-39; *supra* n.2.

and may not apply for any relief under [the INA]." Galindo interprets this provision to mean that the reinstatement of a prior order of removal precludes an alien from *subsequently* seeking relief from removal, but does not extinguish applications for relief filed *prior* to the reinstatement. Thus, he argues, *Alcala* is distinguishable from his case because Alcala "had no right to seek cancellation *after* an [expedited removal order]" due to the operation of 8 U.S.C. § 1231(a)(5), and therefore "was no worse off when his case was dismissed[,] . . . [and] depriving him of federal appellate jurisdiction did not create an unlawful *Lolong* limbo state." In contrast, Galindo argues that the reinstatement of the expedited removal order in Galindo's case "could not be used to thwart a *preexisting* application for relief," and so "Galindo has lost a pending claim for relief from deportation" due to the dismissal of his claim, creating a *Lolong* problem.

We reject his argument. First, we disagree with his reading of § 1231(a)(5). In Galindo's case, the reinstatement of the prior expedited removal order *would* "thwart" his application for cancellation of removal. Nothing in § 1231(a)(5) indicates that its bar on eligibility for relief applies only to relief sought prospectively, as opposed to an application for relief already pending. Indeed, the provision includes two distinct clauses: an alien who has been removed and then reenters illegally is "[1] not eligible *and* [2] may not apply for" relief under the INA. 8 U.S.C. § 1231(a)(5) (emphasis added). If § 1231(a)(5) were meant to bar only future applications for relief, the "not eligible and" language would be superfluous. *See Weinberger v. Hynson, Wescott and Dunning, Inc.*, 412 U.S. 609, 633 (1973) (noting the "well-settled rule of statutory construction that all parts of a statute, if at all possible, are to be given effect"). Nowhere in Galindo's briefs does he attempt to explain how his theory of § 1231(a)(5) is consistent with this language.

[4] Second, *Alcala* did not engage in the kind of "harmless error" analysis that Galindo appears to believe that it con-

ducted. In fact, in *Alcala*, we even noted that our holding was compelled by the INA "no matter how unsatisfying the Limbo-like circumstances in which an individual petitioner finds himself." 563 F.3d at 1016. Our holding in *Alcala* was purely jurisdictional: we held that we lacked jurisdiction because the agency had not yet reinstated its expedited removal order and thus the BIA's decision "resulted in no order of removal whatsoever," *id.* at 1013, the precise situation here. It makes no difference to the jurisdictional question whether the expedited removal order occurred before or after Galindo's application for cancellation of removal; under *Alcala*, it is the *lack of reinstatement* that precludes our jurisdiction. *See id.* at 1013-14.

## III

**[5]** In sum, the decisions of the BIA and IJ resulted in no final order of removal for us to review, and there will be no final order of removal for us to review until the government either reinstates its prior expedited removal order or initiates new formal removal proceedings. "When, and if, the government chooses to reinstate the [April 23, 2000,] expedited order of removal, [Galindo] may seek whatever judicial remedies are afforded to an alien in reinstatement proceedings." *Id.* at 1014. Until then, we lack jurisdiction.

DISMISSED.