**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ERIKA GARCIA DE RINCON,
                         *Petitioner,*

            v.

DEPARTMENT OF HOMELAND
SECURITY,
                         *Respondent.*

No. 04-15411

D.C. No.
CV-04-00024-PMP

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, District Judge, Presiding

ERIKA GARCIA DE RINCON,
                         *Petitioner,*

            v.

MICHAEL B. MUKASEY,*
                         *Respondent.*

No. 04-70555

Agency Nos.
A95-441-701
A78-099-285

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 13, 2008—San Francisco, California

Filed August 21, 2008

---

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

11277

Before: Mary M. Schroeder, John M. Walker, Jr.,** and
N. Randy Smith, Circuit Judges.

Opinion by Judge N. Randy Smith

---

**The Honorable John M. Walker, Jr., Senior United States Circuit
Judge for the Second Circuit, sitting by designation.

---

## COUNSEL

Jon Eric Garde, Esq., Law Offices of Jon Eric Garde, Las Vegas, Nevada, for the petitioner.

Luis E. Perez, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondents.

---

## OPINION

N. RANDY SMITH, Circuit Judge:

The Immigration and Nationality Act ("INA") contains a number of provisions limiting our jurisdiction to review

orders that remove aliens who attempt to enter the United States unlawfully. Ranking among the most stringent is 8 U.S.C. § 1252(e). Section 1252(e) largely divests this court of jurisdiction to review the merits of an expedited removal order, which is an order that summarily removes an alien who attempts to gain entry into the United States by falsely claiming citizenship. The petitioner, Erika Garcia de Rincon ("de Rincon"), was subject to an expedited removal order in April 1999. Although we are sympathetic to the hardships resulting from de Rincon's subsequent removal from this country, § 1252(e) does not allow us to indulge those sympathies. We lack jurisdiction over her consolidated appeal and, accordingly, must dismiss.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

De Rincon, a native and citizen of Mexico, first entered the United States in 1995. In 1997 she married Alberto Rincon, a lawful permanent resident; the two had a daughter born in Las Vegas about that time. Sometime in 1999, de Rincon traveled to Mexico to visit her ailing mother. When she returned to the United States in late April of 1999, she was detained at the border. After being placed in secondary inspection, she was interviewed by an Immigration Officer on April 23, 1999. During that interview, which according to the record was conducted in her native Spanish, de Rincon was questioned about the circumstances of her re-entry. She admitted that she had falsely claimed to be a United States citizen (representing that she was born in Los Angeles) in an attempt to gain entry into the country. She likewise admitted that she knew it was illegal to misrepresent her citizenship, and that she had no documentation to gain lawful entry.

Based on these statements, an expedited removal order was issued the same day, deeming de Rincon removable as an alien that had falsely attempted to gain admission as a United States citizen. De Rincon maintains, in an affidavit later prepared in support of her appeal, that during the April 1999

interview she "did not understand many of the questions or what they were talking about . . . . I was only 22 years old and I was very frightened and confused . . . . I did not know if they were even going to let me go." Premised on the summary nature of the expedited removal proceedings, de Rincon alleges that she was denied due process. However, her affidavit does not address, and so does not dispute, that she made a false representation of United States citizenship during her attempted April 1999 entry.

Within days of her expedited removal, de Rincon nonetheless re-entered the United States unlawfully and returned to her husband and daughter in Las Vegas. Between 1999 and 2002, de Rincon and her husband purchased a home in Las Vegas, and had another child, a son. Both she and her husband worked and raised their children together during that time period. Other than her unlawful entries into the United States, de Rincon has been law-abiding and productive.

On March 29, 2002, de Rincon filed a Form I-485 Application for Adjustment of Status based on her husband's filing of an approved I-130 visa on her behalf. In conjunction with these papers, de Rincon filed an I-212 Application for Permission to Reapply for Admission into the United States after Deportation or Removal. De Rincon appeared for a formal interview before an immigration officer on December 16, 2003, not knowing that a search of her records had found the April 23, 1999 expedited removal order. Immigrations and Customs Enforcement ("ICE") issued an immediate arrest warrant and she was placed into custody.

On January 6, 2004, de Rincon executed a sworn statement taken by ICE regarding her immigration history. In that statement, she admits that she reentered unlawfully after her April 23, 1999 removal. ICE immediately reinstated her prior expedited removal order. The next day, January 7, 2004, ICE issued a warrant of removal and deportation for de Rincon, which she refused to sign. The day after that, January 8,

2004, de Rincon received a decision denying her application for adjustment of status based on her false claim of citizenship, a non-waivable ground for removal. She was removed from the United States that evening. A petition for review with the Department of Homeland Security ("DHS") (No. 04-15411) followed the reinstatement of her removal order.

On January 8, 2004, de Rincon filed a habeas petition in the District of Nevada challenging her reinstatement order, collaterally attacking the underlying expedited removal order and requesting a stay of removal. A magistrate judge denied the request for a stay; a district court judge subsequently granted the stay, but not before de Rincon had already been removed to Mexico. On February 19, 2004, the district court issued an order addressing the remaining issues in de Rincon's habeas petition. It held, primarily, that it lacked jurisdiction to review de Rincon's reinstated removal order pursuant to 8 U.S.C. § 1231(a)(5). But, instead of complete dismissal, it transferred de Rincon's habeas petition to this court pursuant to 28 U.S.C. § 1631. Noting that de Rincon's removal imposed the "draconian result" of barring her from reapplying for admission for the next twenty years, the district court opined that the Ninth Circuit might conclude that "minimum due process concerns may be triggered." De Rincon's transferred habeas petition was assigned No. 05-70555 in this court. Acknowledging that this court cannot take evidence that would purport to support de Rincon's claim that the underlying expedited removal order violated due process, de Rincon now asks that we re-transfer the habeas petition to the district court for an evidentiary hearing. The appeal involving her habeas petition was consolidated with her petition for review of the ICE's reinstated removal order; both appeals are before us now.

## II.   STANDARD OF REVIEW

This court reviews questions of jurisdiction *de novo*. *Burlington N. Santa Fe Ry. v. IBT Local 174*, 203 F.3d 703, 707 (9th Cir. 2000) (en banc). The court also reviews due process

claims and questions of law raised in immigration proceedings *de novo*. *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004).

## III.  DISCUSSION

Both of de Rincon's two appeals seek to collaterally attack her 1999 expedited removal order, albeit through alternative means. In her first appeal, de Rincon petitions directly for review of ICE's reinstated removal order and seeks to collaterally attack the underlying expedited removal order on due process grounds. In her second appeal, de Rincon asks that we transfer her habeas petition back to the district court where it could conduct an evidentiary hearing and reach the merits of her claim that she was denied due process during the proceedings that led to her April 1999 expedited removal. In both instances, jurisdictional bars prevent us from providing de Rincon's requested relief.

### A.    This court lacks jurisdiction to hear de Rincon's collateral attack on her reinstated expedited removal order.

Two statutes limit this court's jurisdiction over certain final orders of removal—8 U.S.C. §§ 1231(a)(5) and 1231(e). These provisions preclude our review of the ICE's January 7, 2004 reinstated removal order and the underlying expedited removal order itself, at least with respect to the type of generalized due process claim de Rincon raises.

[1] The first of these statutes, § 1231(a)(5), limits the scope of this court's review of reinstated removal orders. It states in full:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is rein-

> stated from its original date and *is not subject to being reopened or reviewed*, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

*Id.* (emphasis added). This court, sitting en banc, recently examined the scope of § 1231(a)(5) in *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 495-97 (9th Cir. 2007) (en banc). *Morales-Izquierdo* held that the regulations implementing § 1231(a)(5), which allow an immigration officer to reinstate removal orders without a full hearing before an immigration judge, satisfied due process. *Id.* The court assumed jurisdiction to review such orders, but limited its review to the three discrete inquiries an immigration officer must make in order to reinstate a removal order: (1) whether the petitioner is an alien; (2) whether the petitioner was subject to a prior removal order, and (3) whether the petitioner re-entered illegally. *Id.* at 495 (citing reinstatement regulations at 8 C.F.R. § 241.8). Although *Morales-Izquierdo* left open the possibility that "individual petitioners may raise procedural defects in their particular cases," it held that the regulations survived a facial due process challenge. *Id.* at 496. The court further stated: "Reinstatement of a prior removal order—regardless of the process afforded in the underlying order—does not offend due process because reinstatement of a prior order does not change the alien's rights or remedies." *Id.* at 497. Thus, under *Morales-Izquierdo*, a petitioner cannot raise a due process challenge to an underlying removal order and review of the reinstatement itself is limited to confirming the agency's compliance with the reinstatement regulations.

**[2]** *Morales-Izquierdo* did not, however, address the effect that § 1252(a)(2)(D) may have on review of constitutional claims raised in the context of reinstated removal orders. Section 1252(a)(2)(D) re-vests the circuit courts with jurisdiction to hear "constitutional claims or questions of law" that might

otherwise be barred under the INA. That provision states in full:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, *shall be construed as precluding review of constitutional claims or questions of law* raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

§ 1252(a)(2)(D) (emphasis added). All three circuit courts that have considered the interplay between § 1252(a)(2)(D) and § 1231(a)(5) have held that § 1252(a)(2)(D) re-vests the circuit courts with jurisdiction over constitutional claims or questions of law raised in the context of reinstatement proceedings. *See Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007) ("Congress *clearly* provided for our review of 'constitutional claims or questions of law' related to reinstatement orders.") (emphasis added) (quoting 8 U.S.C. § 1252(a)(2)(D)); *Debeato v. Mukasey*, 505 F.3d 231, 235 (3d Cir. 2007) ("Accordingly, we conclude that . . . § 1252(a)(2)(D)[ ] permits us to exercise jurisdiction over legal and constitutional challenges to final orders of removal, including those final orders that the Attorney General has reinstated pursuant to § 1231(a)(5)."); *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513-14 (5th Cir. 2006) ("Because § 1231(a)(5) limits judicial review, § 1252(a)(2)(D) prevents its operation in cases, such as this one, in which the validity of an underlying order is questioned on constitutional or legal grounds."). In *Martinez-Merino v. Keisler*, 525 F.3d 801, 804 (9th Cir. 2008), which also addressed the reviewability of a collateral attack on an underlying removal order raised after the reinstatement of that order, the court acknowledged these three decisions but ultimately did not "decide [ ] the precise effect of § 1252(a)(2)(D) on our review of reinstated removal orders."

**[3]** Both *Debeato* and *Ramirez-Molina* hold that § 1252(a)(2)(D) permits some collateral attack on an underlying removal order during review of a reinstatement order if the petitioner can show that he has suffered a "gross miscarriage of justice" in the initial deportation proceeding. *Debeato*, 505 F.3d at 235 (holding that the "gross miscarriage" standard is a "facet of the standard of review of collateral challenges to removal orders"); *Ramirez-Molina*, 436 F.3d at 514 (holding that "in the context of a petition for review of a reinstatement decision, we can review the validity of the underlying removal order only if [petitioner] establishes that there was a gross miscarriage of justice in the initial proceedings"). Our court also applied the "gross miscarriage of justice" standard to a petitioner's collateral attack on an underlying removal order during reinstatement, although it did not explicitly define the limits of that standard. *Martinez-Merino*, 525 F.3d at 805 ("He has not shown a 'gross miscarriage of justice.' He is not entitled to relief.") (internal citation omitted). So, while *Morales-Izquierdo* generally prevents a petitioner from collaterally attacking an underlying removal order on constitutional due process grounds, § 1252(a)(2)(D) permits some measure of review if the petitioner can demonstrate a "gross miscarriage of justice" in the prior proceedings. Unfortunately for de Rincon, however, whatever relief might be gained by the operation of § 1252(a)(2)(D) and the "gross miscarriage" standard, it is unavailable to her because her underlying removal order is an *expedited* removal order that is subject to additional jurisdictional bars—8 U.S.C. §§ 1252(a)(2)(A) and 1252(e).

**[4]** Although § 1252(a)(2)(D) re-vests courts with jurisdiction to review constitutional claims and questions of law otherwise barred by the INA, § 1252(a)(2)(D) itself is subject to limitations. Section 1252(a)(2)(D) does *not* apply to the jurisdictional limitations codified elsewhere in § 1252. *See* § 1252(a)(2)(D) (review reinstated for provisions "*other than this section*") (emphasis added). One of those limitations is contained in § 1252(a)(2)(A), which strictly circumscribes the

scope of review of expedited removal orders to the grounds enumerated in § 1252(e). *See* § 1252(a)(2)(A) ("no court shall have jurisdiction to review" orders of removal entered under 8 U.S.C. § 1225(b)(1) [expedited removal orders], "except as provided in subsection (e) of this section."); *see also* 8 U.S.C. §§ 1225(b)(1)(A)(i) and 1182(a)(6)(C)(ii)(I) (permitting an immigration officer to issue an expedited order of removal "without further hearing or review" if the alien "falsely represents, or has falsely represented himself or herself to be a citizen of the United States"). Section 1252(e) only permits review of expedited removal orders in a habeas corpus petition, and even then the review is limited to an inquiry over whether: "(A) the petitioner is an alien, (B) whether the petitioner was ordered removed under such section, and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, [or is a refugee or has been granted non-terminated asylum]." *See* 8 U.S.C. § 1252(e)(2).

**[5]** By the clear operation of these statutes, we are jurisdictionally barred from hearing de Rincon's challenge to the January 7, 2004 reinstatement of her expedited removal order. This court does retain some limited jurisdiction to adjudicate a collateral attack on an underlying expedited removal order that has been reinstated; but §§ 1252(a)(2)(A) and 1252(e) expressly limit the scope of such review to habeas petitions alleging that the petitioner is not an alien or was never subject to an expedited removal order. *See* §§ 1252(a)(2)(A), 1252(e). De Rincon's direct challenge to the reinstated removal order is not a habeas petition and it does not contest her expedited removal order on any of the enumerated permissible grounds in § 1252(e)—this court therefore has no jurisdiction to hear it.

**[6]** The Tenth Circuit has considered this exact question and reached the same result. In *Lorenzo*, the petitioner was seeking review of a reinstated expedited removal order. 508 F.3d at 1280. The Tenth Circuit acknowledged that the limita-

tions in § 1231(a)(5) are subject to § 1252(a)(2)(D). But it went on to hold that the jurisdictional framework preserved by § 1252(a)(2)(D) over constitutional claims and questions of law does not extend to collateral attacks on *expedited* removal orders. The court explained:

> Section 1252(a)(2)(D) preserves § 1252(a)(2)(A). Section 1252(a)(2)(A) provides that "no court shall have jurisdiction to review" orders of removal entered under 8 U.S.C. § 1225(b)(1), "except as provided in subsection (e) of this section." The avenues for review provided by § 1252(e) are strictly limited and do not apply here. *See Ochoa-Carrillo v. Gonzales*, 446 F.3d 781, 782 (8th Cir. 2006) (explaining that "the limited habeas review of (removal orders issued under § 1225(b)(1) that is authorized by § 1252(e)(2) may not be conducted in a § 1231(a)(5) reinstatement proceeding").

> Petitioner's 1998 removal order was issued pursuant to § 1225(b)(1). As a result, we lack jurisdiction to review any constitutional or statutory claims related to the underlying removal order in this case.

*Id.* at 1281. We agree with the Tenth Circuit's explanation of the statutory scheme: § 1252(a)(2)(A) fully preserves the jurisdictional limitations found in § 1252(e).[1] Section 1252(e)

---

[1]While the Ninth Circuit has not expressly addressed the interplay between §§ 1252(a)(2)(A) and 1252(e), it has acknowledged that the jurisdictional limitations on review of expedited removal orders are quite severe. *See Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818-19 (9th Cir. 2004) ("[W]ere we in doubt about Congress' intent to severely limit both contemporaneous and later tampering from the results that flow from § 1225(b)(1) [expedited] removal orders, it has added provisions which underscore that intent . . . . It has limited habeas corpus review to a rather narrow group of questions, and it has declared that a long-standing rule which permitted collateral attacks on removal orders in criminal proceedings shall not be applied to this type of removal.").

in turn deprives us of jurisdiction to review de Rincon's claim that she was denied due process during the proceedings that resulted in her April 1999 expedited removal.[2]

### B.   Both this court and the district court lack jurisdiction to hear de Rincon's habeas petition challenging her expedited removal order.

As explained above, this court lacks jurisdiction over de Rincon's habeas petition collaterally attacking her expedited removal order, because de Rincon does not raise any of the three permissible bases for habeas review in this court allowed under 8 U.S.C. § 1252(e)(2). *Id.* (limiting this court's habeas jurisdiction to review whether petitioner is an alien, whether she was subject to an expedited removal order, and whether petitioner is a lawful permanent resident or has been granted asylum). De Rincon does not challenge her expedited removal order on any of the approved grounds; consequently, this court does not have jurisdiction over the particular collateral attack presented in de Rincon's habeas petition.

Perhaps in recognition of the jurisdictional problems faced in this court, de Rincon now seeks to have her habeas petition re-transferred to the district court pursuant to 28 U.S.C. § 1631.[3]

---

[2]De Rincon's challenge to the January 7, 2004 reinstatement of her expedited removal order also vaguely contends that the reinstatement process itself deprived her of due process, arguing that during reinstatement she was not permitted to review the Government's evidence or present her own evidence with the assistance of counsel. This generalized due process challenge to the reinstatement regulations is soundly foreclosed by *Morales-Izquierdo*, 486 F.3d at 495-96. We therefore deny the petition with respect to this claim. Even if we read de Rincon's argument charitably as a challenge to the reinstatement regulations as applied to her, it still fails because she has not alleged any prejudice that resulted from a more extensive reinstatement process. *Id.* at 496-97 (rejecting petitioner's as applied challenges based on lack of access to the administrative record or counsel, due to failure to show prejudice).

[3]28 U.S.C. § 1631 provides: "Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for

A case is "transferable" when three conditions are met: "(1) the transferee court would have been able to exercise its jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice." *Puri v. Gonzales*, 464 F.3d 1038, 1043 (9th Cir. 2006). The most significant hurdle to de Rincon's request for transfer pursuant to 28 U.S.C. § 1631 is the most obvious— the district court has already dismissed her habeas petition for lack of jurisdiction, due to the limitations on review of reinstated expedited removal orders contained in §§ 1231(a)(5) and 1252(e). De Rincon points to no intervening jurisdictional changes since the February 18, 2004 dismissal that would have re-vested the district court with jurisdiction. In fact, the law has only gotten worse for her in the interim.

[7] The most significant change to the immigration statutes since the district court's February 2004 dismissal is the May 2005 passage of the Real ID Act ("RIDA"). Pub. L. No. 109-13, § 106, 119 Stat. 231 (2005). RIDA amended § 1252(b)(9) of the INA to vest the circuit courts with exclusive habeas jurisdiction over petitions challenging final orders of removal. *See* 8 U.S.C. § 1252(b)(9); 1252(a)(5) ("Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28, or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact."). As the Second Circuit has held, the passage of RIDA and its attendant bar on a district court's jurisdiction over removal-based habeas petitions generally forecloses a circuit

---

review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred."

court's ability to transfer a habeas petition related to a removal order back to the district court. *See Wang v. DHS*, 484 F.3d 615, 618 (2d Cir. 2007) ("Finally, we cannot retransfer the case to the District Court under § 1631 for consideration of the petition because, as the District Court recognized, the Real ID Act eliminated the availability of habeas corpus as a separate means of obtaining judicial review of a final order of removal."). So, transfer is not possible here because the transferee court has no jurisdiction over de Rincon's petition, because of the jurisdictional bars in 8 U.S.C. §§ 1252(e) and 1252(b)(9).

Although it is not articulated in this manner, de Rincon's actual claim underlying her request for a § 1631 transfer is based on the Suspension Clause—the limitations on jurisdiction in 8 U.S.C. § 1252 must not deprive her of some forum to provide a full review of her habeas petition. In other words, because the INA, as amended after the passage of RIDA, does not allow a habeas petition challenging an expedited removal order to be heard in any forum that could take evidence and thereby fully adjudicate the claim, the INA provides no adequate substitute for habeas review and therefore suspends the writ. Persuasive authority, and the sheer force of the statutory scheme at issue, compel us to conclude otherwise.

In *Li v. Eddy*, we suggested that narrow habeas review of expedited removal orders does not raise the constitutional problems alluded to in *INS v. St. Cyr*, 533 U.S. 289, 121 S. Ct. 2271, 150 L. Ed.2d 347 (2001), provided that the petitioner has not been lawfully admitted. 259 F.3d 1132, 1135 (9th Cir. 2001), *vacated on reh'g as moot*, 324 F.3d 1109 (9th Cir. 2003).[4] The *Li* court affirmed the district court's jurisdictional dis-

---

[4]*Li* was subsequently vacated on mootness grounds, and is therefore not binding precedent. We discuss it here nonetheless because the case is analytically sound, and because it was vacated on grounds unrelated to its analysis of the constitutionality of the limitations on review of an expedited removal order.

missal of the petitioner's habeas petition challenging her expedited removal, because the petitioner had not raised any claims falling within the narrow scope of review permitted by § 1252(e)(2). *Id.* at 1133. The court observed that the limitations in § 1252(e)(2) "could not be much clearer in [their] intent to restrict habeas review." *Id.* at 1134-35. The court went on to reject the petitioner's claim that she had a constitutional right to due process that was violated by an expedited removal: "Li . . . has no constitutional due process right to challenge her immigration status or to petition for entry into the United States because she is a non-resident alien seeking entry at the border into the United States . . . . The Supreme Court has held that the discretion of Congress to determine which and on what basis aliens may enter this country is paramount." *Id.* at 1136. So, while *Li* is not a Suspension Clause case *per se*, it does discredit the generalized due process argument raised by de Rincon, which is the right she seeks to vindicate via habeas.[5]

[8] Combined with the *Avendano-Ramirez* court's holding regarding the severity of the limitations on review in § 1252(e)(2), 365 F.3d at 818-19, we simply cannot avoid the unambiguous effect of the statutory restrictions on review of expedited removals. So, while the result may be unsatisfying —and unduly harsh given de Rincon's family situation and a record indicating that she is otherwise an upstanding person— we must dismiss de Rincon's habeas petition for lack of jurisdiction and refuse transfer on the same grounds. *Avendano-Ramirez*, 365 F.3d at 819 ("When Congress enacted IIRIRA, it adopted a number of rules which fall with an implacable,

---

[5]As the court in *Li* and the parties themselves have noted, there is a separate statutory sub-section, 8 U.S.C. § 1252(e)(3), that allows a systemic challenge to the expedited removal process and its implementing regulations to be brought in the United States District Court for the District of Columbia. The regulations were sustained against such a challenge. *American Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38, 54-56 (D.D.C. 1998).

and perhaps unintended, harshness on some aliens. So it is here.").[6]

## IV.   CONCLUSION

As a result of her unlawful re-entry into the United States after expedited removal, de Rincon has been removed to Mexico and leaves behind a lawful resident husband and two United States citizen children. She faces a twenty year ban on any subsequent applications for admission. It is a result that is, in the words of the district court, "draconian." But the limits on jurisdiction codified in § 1252(e) are indifferent to these

---

[6]Even if we had jurisdiction to consider de Rincon's due process claim, we would still be unable to provide relief. To prevail on that claim, de Rincon would have to show actual prejudice, "which means that the outcome of the proceeding may have been affected by the alleged violation." *Reyes-Melendez v. INS*, 342 F.3d 1001, 1006 (9th Cir. 2003). De Rincon's primary contentions are that she did not understand some of the questions she was being asked and that had she been given a fuller hearing she would have developed a more complete record by presenting her own evidence. But her affidavit is revealing mostly for what it does not say.

De Rincon does not contend that she did not misrepresent her citizenship during inspection, or that she did so because she was confused when asked about that; nor does she argue that she had a valid claim for relief from expedited removal that the truncated process prevented her from bringing forward.   Although de Rincon asserts she was "frightened and confused" and "understood [ ] little" during her removal interview, she fails to take the following step of alleging how this confusion affected the outcome of that interview in any meaningful way. A review of the complete transcript of the interview, signed by de Rincon, does not bear any indicia of confusion on her part. Thus, while de Rincon does make a generalized allegation of confusion, she fails to link it to any information that was improperly conveyed as a result. *See Morales-Izquierdo*, 486 F.3d at 496 (rejecting due process claim based on inability to develop complete record where petitioner "points to no material errors in his file; nor does he explain what evidence he would have been presented, had he been given an opportunity to do so"). Accordingly, even if there were some forum with jurisdiction to reach the merits of her due process claim, we would nonetheless conclude that de Rincon did not suffer the prejudice necessary to gain relief.

sorts of equitable considerations. Although it gives us no pleasure to do so, we dismiss de Rincon's consolidated appeal for lack of jurisdiction.

In No. 04-15411, de Rincon's habeas **PETITION** is **DISMISSED**. In No. 04-70555, de Rincon's **PETITION** for review is **DISMISSED** in part and **DENIED** in part.