OPINION
BERZON, Circuit Judge:
Alejandro Israel Villa-Anguiano (“Villa”) petitions for review of the government’s reinstatement of a removal order issued in 1997. Villa contends that the Immigration and Customs Enforcement (“ICE”) agency of the Department of Homeland Security (“DHS”) may not deport him on the basis of his prior removal order, because a federal district court found that due process violations in his 1997 immigration hearing rendered the removal order invalid as a predicate for criminal prosecution under 8 U.S.C. § 1326.
We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review a reinstatement order, see Castro-Cortez v. INS, 239 F.3d 1037, 1044 (9th Cir.2001), abrogated on other grounds by Fernandez-Vargas v. Gonzales, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006); accord Padilla v. Ashcroft, 334 F.3d 921, 924 (9th Cir.2003), and retain jurisdiction under § 1252(a)(2)(D) to consider “constitutional claims or questions of law raised upon a petition for review,” see Garcia de Rincon v. DHS, 539 F.3d 1133, 1137-38 (9th Cir.2008). For the reasons stated below, we grant Villa’s petition, vacate the reinstatement order, and remand to ICE for further proceedings.
I.
This case comes before us in an unusual posture. Villa, who entered the United *876 States from Mexico at the age of one, became a lawful permanent resident in 1989. Following a conviction for voluntary-manslaughter in 1993 and service of his stipulated sentence, Villa was ordered deported in 1997 at a group hearing before an immigration judge in El Centro, California. He was physically removed in 1999 but subsequently reentered the United States without permission in 2001. On May 3, 2008, Villa was arrested by local law enforcement following a traffic stop. The next day, the government determined that Villa was “subject to removal by reinstatement of the prior [1997] order,” pursuant to 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8.
Villa concedes that he was provided notice and an opportunity -to contest reinstatement on May 4, 2008, as required by 8 C.F.R. § 241.8(b). His signature appears on the Notice of Intent/Decision to Reinstate Prior Order form, beside the statement, “I do not wish to make a statement contesting this determination.” The government did not, however, proceed at. that point with the actual removal. Instead, the government decided to prosecute Villa for illegal reentry.
Before the district court on the illegal reentry charge, and now with the assistance of counsel, Villa collaterally attacked his 1997 removal order. See 8 U.S.C. § 1326(d); United States v. Mendoza-Lopez, 481 U.S. 828, 837-38, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) (permitting an alien to seek review of the deportation order used as a predicate element of an illegal reentry offense if he was denied judicial review of prior removal proceedings). He contended that due process violations in the underlying removal proceedings precluded him from obtaining judicial review of his 1997 deportation order. The government conceded that Villa was eligible in 1997 for relief under Immigration and Nationality Act (“INA”) § 212(c) and that the Immigration Judge did not inform him of that fact. But, the government argued § 212(c) relief was not plausible at the time of the immigration hearing, which predated INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), and thus Villa could not show prejudice.
The district court rejected the government’s arguments, finding: (1) that Villa had demonstrated a deprivation of his right to counsel in the group immigration hearing; and (2) that Villa was prejudiced by the resulting due process violation, because he was eligible for relief under § 212(c) at the time of his removal proceedings, and was not so informed. Consequently, the district court held, “the outcome of [his] immigration proceeding was potentially affected by the denial of his right to counsel.”[1] The court held the *877 1997 removal order invalid as the predicate for criminal prosecution under § 1326 and so, on October 9, 2008, dismissed Villa’s indictment.
On October 10, 2008, the day after Villa’s criminal proceedings were dismissed, immigration officials “reinstated on today’s date” the “prior order of removal by an Immigration Judge,” and Villa was physically removed. Villa was neither notified at that point that the order was going to be issued and executed nor given an opportunity to object, either in writing or orally, to the reinstatement. He was denied such opportunity despite the very relevant development that occurred in the five months since reinstatement proceedings were initiated — namely, the district court’s determination that the 1997 removal order was constitutionally infirm.
ICE was aware of the criminal prosecution from the outset. The Record of Deportable/Inadmissible Alien, Form 1-213, dated May 4, 2008, indicated that Villa was “being held in DHS custody pending criminal prosecution for violation of 8 U.S.C. § 1326.” But the addendum to the form, dated October 10, 2008, reflects confusion regarding the result of that criminal case. The addendum correctly noted, “On October 09, 2008, Subject’s case was dismissed for violation of 8 USC 1326(a) — Deported
Alien Found in the United States.” It went on, however, to state erroneously that Villa “served 156 days confinement in federal custody for violation of 8 USC 1326(a) — Deported Alien Found in the United States,” implying that Villa had been convicted of illegal reentry (emphases added). The addendum nowhere indicated the grounds on which the § 1326 indictment was dismissed or evidenced any awareness by ICE officials that the district court had held the original removal order invalid. It concluded with the statement: “Subject’s prior order of removal by an Immigration Judge will be reinstated on today’s date.” Villa was immediately removed.
This pétition for review followed.
II.
The INA’s reinstatement provision, 8 U.S.C' §' 1231(a)(5), specifically bars relitigation of the merits of the reinstated removal order — i.e. determination of an alien’s removability or eligibility for relief.[2] Accordingly, except where constitutional claims or questions of law arise in the context of-reinstatement and “the petitioner can demonstrate a ‘gross miscarriage of justice’ in the [original removal] proceedings,” Garcia de Rincon, 539 F.3d at 1138,[3] *878 our review of a reinstatement order is limited to assessing ICE’s determination of the factual predicates for reinstatement: “(1) [that] petitioner is an alien, (2) who was subject to a prior removal order, and (3)who illegally reentered the United States.” Morales-Izquierdo v. Gonzales, 486 F.3d 484, 495-96 (9th Cir.2007) (en banc).
Under 8 C.F.R. § 241.8(a), the regulation implementing 8 U.S.C. § 1231(a)(5), the determination whether an alien meets the factual predicates for reinstatement is made by an immigration agent, not a judge; an alien has no right to be heard by a judge prior to reinstatement of a removal order. See Morales-Izquierdo, 486 F.3d at 493-95, 497 (upholding the validity of 8 C.F.R. § 241.8 under the INA and the Constitution). An alien is, however, entitled to notice and an opportunity to make “a written or oral statement contesting the determination.” § 241.8(b). Although we have held that this streamlined reinstatement procedure does not offend due process, we expressly “[left] open the possibility that individual petitioners may raise procedural defects in their particular cases.” Morales-Izquierdo, 486 F.3d at 496.
Even though an alien is not entitled to a hearing before an immigration judge on the issue of reinstatement of a prior removal order, nothing in 8 U.S.C. § 1231(a)(5) or its implementing regulations deprives the agency of discretion to afford an alien a new plenary removal hearing. “Reinstatement of a prior order of removal is not automatic.” Alcala v. Holder, 563 F.3d 1009, 1013 (9th Cir.2009). Nor is it obligatory: “Under 8 U.S.C. § 1231(a)(5), if the Attorney General finds an alien has reentered this country illegally after having been removed ... the prior order can be reinstated from its original date,” provided the requirements of 8 C.F.R. § 241.8(a) and (b) have been satisfied. Id. (emphasis added); accord Galindo-Romero v. Holder, 640 F.3d 873, 879 (9th Cir.2011). Particularly when there is any question about whether the requirements of § 241.8 have been satisfied, and even when they have been, an ICE officer may decide to forgo reinstatement of a prior order of removal in favor of initiating new removal proceedings, with the accompanying procedural rights to counsel and a hearing in immigration court. See 8 U.S.C. § 1229a(b)(4) (describing an alien’s rights in removal proceedings).
ICE regularly exercises “prosecutorial discretion” in “a broad range of discretionary enforcement decisions,” including “deciding to issue, reissue, serve, file, or cancel a Notice to Appear (NTA) [and] ... seeking expedited removal or other forms of removal by means other than a formal removal proceeding in immigration court.” Memorandum from John Morton, Director, ICE, on Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention and Removal of Aliens, at 2 (June 17, 2011). Immigration officers “who have authority to institute immigration removal proceedings or to otherwise engage in civil immigration enforcement,” id. at 3, “are not only authorized by law but expected to exercise discretion in a judicious manner at all stages of the enforcement process,” Memorandum from Doris Meissner, Commissioner, Immigration and Naturalization Service, on Exercising Prosecutorial Dis *879 cretion, at 1 (Nov. 17, 2000). Thus, ICE agents, to whom § 1231(a)(5) delegates the decision to reinstate a prior removal order, may exercise their discretion not to pursue streamlined reinstatement procedures.
III.
Villa does not contest the factual predicates for the reinstatement order. Nor has he asserted a gross miscarriage of justice in the underlying immigration hearing, which could justify this court’s review of the constitutionality of the prior removal order.[4] Instead, Villa challenges the propriety of reinstating a removal order that has been invalidated on constitutional grounds for purposes of criminal prosecution.[5]
This precise situation has not arisen in any reported cases of which we are aware. The government explained at oral argument a likely reason for that gap: “In many cases where the district court does dismiss the indictment [ICE officers] go ahead and put the alien in regular removal proceedings.” That is, rather than reinstating an order found to be an invalid predicate for a criminal reentry prosecution, the agency often exercises its discretion to initiate plenary removal proceedings (with the requisite notice, hearing before an immigration judge, right to appeal to the Board of Immigration Appeals, and right to seek judicial review in a court of appeals), following dismissal of a § 1326 indictment because of a successful collateral attack on the underlying removal order. ■ See 8 U.S.C. §§ 1229, 1229a. Here, however, ICE reinstated Villa’s prior order and executed it as soon as his criminal case was dismissed, without providing Villa an opportunity to explain the developments in district court or correct any misimpressions regarding those developments, and, it appears, without independently reconsidering its use of expedited proceedings in light of the constitutional infirmities in the underlying immigration hearing identified by the district court.
As explained, an incorrect statement on the addendum to the Form 1-213 states that Villa served time for a § Í326 conviction. This statement indicates that the immigration agents responsible for executing Villa’s reinstatement order were either unaware of, or misinformed about, the district court’s findings regarding the prior removal proceedings, and so almost surely did not take them into account in determining how to proceed. Certainly, the Form did not explain why Villa’s criminal case was dismissed.[6] The government *880 agreed, at argument, that the agency ordinarily would not have done what it did here.
To be sure, the pendency of reinstatement proceedings does not provide an alien with a new avenue to challenge the underlying removal order. As we made clear in Morales-Izquierdo, allowing an alien to manufacture an opportunity to contest his earlier removal by reentering the country illegally, thereby triggering removal proceedings anew, would create perverse incentives. See 486 F.3d at 498. But we have not considered a situation like the present one, in which the government itself invites judicial scrutiny of the underlying removal order by instigating a criminal prosecution under § 1326. We conclude that when, as a result of such scrutiny, a district court finds constitutional infirmities in the prior removal proceedings that invalidate the prior removal for purposes of criminal prosecution, the agency cannot simply rely on a pre-prosecution determination to reinstate the prior removal order. Instead the agency must — as it may well ordinarily do — (1) provide the alien with an opportunity after the criminal prosecution is dismissed to make a written or oral statement addressing the expedited reinstatement determination in light of the facts found and the legal conclusions reached in the course of the criminal case; and (2) independently reassess whether to rely on the order issued in the prior proceedings as the basis for deportation or instead to instigate full removal proceedings.[7]
We so conclude for the following reasons: The regulation implementing 8 U.S.C. § 1231(a)(5) requires the immigration officer effecting reinstatement to “consider all relevant evidence, including statements made by the alien and any evidence in the alien’s possession.” 8 C.F.R. § 241.8(a)(3). The alien must be allowed to make a statement contesting the reinstatement determination, and the officer “shall consider whether the alien’s statement warrants reconsideration of the determination.” § 241.8(b).
Those regulatory requirements respect an unlawfully present alien’s right to be heard prior to removal, a right which the Supreme Court has long recognized as grounded in the Due Process Clause.[8] *881 Due process, in turn, entitles an unlawfully present alien to consideration of issues relevant to the exercise of an immigration officer’s discretion. Larita-Martinez v. INS, 220 F.3d 1092, 1095 (9th Cir.2000), for example, held that due process required the Board of Immigration Appeals to consider “all relevant evidence submitted on appeal” when reviewing the wholly discretionary denial of an application for suspension of deportation.[9]
For the requirements of § 241.8(a)(3), (b) to function as the requisite “procedural safeguards” of the alien’s right to due process in the context of streamlined proceedings, see Morales-Izquierdo, 486 F.3d at 496, they must apply at the relevant time. “The fundamen tal requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.” Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (internal quotation marks omitted). For Villa to have had a meaningful opportunity to address the proposed reinstatement of his removal order, then, he must have been afforded that opportunity at a time and in a manner that would allow him to present pertinent information. As the government indicated at oral argument, the district court’s invalidation of Villa’s 1997 removal order as a basis for § 1326 prosecution, due to constitutional infirmities in the original removal proceedings, is ordinarily pertinent to the ageney’s decision as to whether and how to proceed with his removal.
Moreover, the agency must consider all favorable and unfavorable factors relevant to the exercise of its discretion; failure to do so constitutes an abuse of discretion. See An Na Peng v. Holder, 673 F.3d 1248, 1253 (9th Cir.2012) (the BIA abuses its discretion when it fails to consider all relevant factors bearing on the balance of equities or an application for relief); Xiao Fei Zheng v. Holder, 644 F.3d 829, 833 (9th Cir.2011) (same); cf. United States v. $11,500.00 in U.S. Currency, 710 F.3d 1006, 1011 (9th Cir.2013) (a district court abuses its discretion if it fails to consider factors relevant to the exercise of its discretion). If the procedures used by ICE do not assure that the decision-makers obtain the requisite information before the decision is made, then it is unlikely that the decision made will be a proper one under the abuse of discretion standard.
The Third Circuit has considered a somewhat analogous circumstance, in which an alien contested reinstatement on the asserted grounds that his prior removal order was invalidated by a court and that he did not reenter the country illegally. See Ponta-Garcia v. Att’y Gen. of the U.S., 557 F.3d 158, 164 (3d Cir.2009). Recognizing the petitioner’s atypical circumstances, the Third Circuit remanded *882 the case to ICE for consideration of the alien’s assertions. Id. at 165 (citing 8 C.F.R. § 241.8(a)(3)). The court observed that although reinstatement pursuant to the streamlined procedures adopted by Congress will be uncontested in most cases, in the unusual instance in which a petitioner raises issues that could affect whether ICE pursues removal without a prior hearing, “more is required [from the agency] than it appears was done here.” Id.
The government acknowledges that, had it known of the district court’s findings, it quite possibly would have exercised its discretion not to pursue reinstatement of Villa’s 1997 removal order. Consequently, Villa was prejudiced by the ICE agents’ misinformation or lack of information regarding his criminal prosecution, as well as by the absence of an opportunity to contest the reinstatement determination at a meaningful time — namely, before the reinstatement order finally issued and was executed, and after new, relevant circumstances had arisen. Accordingly, we remand to ICE to provide that opportunity and to reconsider its reinstatement determination in light of the district court’s findings regarding Villa’s 1997 removal proceedings. We express no view as to the outcome of that determination on remand.
The petition is GRANTED, the reinstatement order is VACATED, and we REMAND to ICE for reconsideration and further proceedings consistent with this disposition.

. "[T]o mount a successful collateral attack on a prior removal order under § 1326(d), an alién who was convicted of an aggravated felony and was not properly advised of his right to counsel or did not waive this right must show that he was actually prejudiced by this due process violation,” United States v. Reyes-Bonilla, 671 F.3d 1036, 1049 & n. 11 (9th Cir.2012), cert. denied,-U.S.-, 133 S.Ct. 322, 184 L.Ed.2d 190 (2012). At the same time, however, a petitioner need not demonstrate prejudice as a result of a deprivation of the right to counsel to prevail on a petition for review of a removal order. See Montes-Lopez v. Holder, 694 F.3d 1085, 1086, 1090, 1093-94 (9th Cir.2012).
Because Villa does not petition for review of the 1997 removal order in this court, we need not determine at this stage whether he was plausibly eligible for relief under § 212(c) at the time of his immigration hearing. In any event, the record does not contain sufficient information about the nature of Villa's criminal conviction or the equities of his case to enable us to make such a determination. Nor need we resolve whether Villa must demonstrate prejudice to obtain relief. Rather, as discussed infra, our question is whether Vil *877 la's reinstatement proceedings accorded him adequate due process, given the discretion available to immigration agents as to how to pursue removal of an alien following the alien's successful collateral challenge to the underlying removal order as part of a § 1326 prosecution.

. The provision states in full:
If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.
8 U.S.C. § 1231(a)(5).

. Although § 1231(a)(5) limits the scope of judicial review of reinstated removal orders, § 1252(a)(2)(D) reinstates this court’s juris- . diction over certain constitutional claims and questions of law. See Garcia de Rincon, 539 F.3d at 1138 (citing § 1252(a)(2)(D)); see also Martinez-Merino v. Mukasey, 525 F.3d 801, 804 (9th Cir.2008) (applying a gross miscarriage of justice standard without deciding whether § 1252(a)(2)(D) "vests circuit courts with the ability to review reinstated removal orders”); Lorenzo v. Mukasey, 508 F.3d 1278, *878 1282 (10th Cir.2007); Debeato v. Att’y Gen. of the U.S., 505 F.3d 231, 235 (3d Cir.2007); Ramirez-Molina v. Ziglar, 436 F.3d 508, 513—14 (5th Cir.2006); cf. Robledo-Gonzales v. Ashcroft, 342 F.3d 667, 682 n. 13 (7th Cir.2003) (discussing the gross miscarriage of justice standard applied to collateral attacks on prior deportation proceedings).

. The government contends that even if we had jurisdiction to review Villa's 1997 removal order under § 1252(a)(2)(D), that jurisdictional savings clause does not apply when an alien’s petition for review is untimely under § 1252(b)(1), because not hied within thirty days of the final order of removal. Because this case does not directly involve a challenge to the 1997 order, see supra note 1, we need not decide whether § 1252(b)(1) would preclude such review.

. Judge Tallman accuses us of advocacy, on the theory that "Villa failed to make this due process challenge in his briefing.” Dissent at 27; see also Dissent at 884 n. 1. Not so. Before this Court, Villa complained that immigration officials "did not provide ... a meaningful opportunity to contest the reinstatement” of his removal order, as 8 C.F.R. § 241.8(b) typically provides, and he sought remand “for proceedings that comport with Constitutional due process.” Otherwise, reinstatement amounted to "a continued violation of ... Constitutional due process rights.” Villa thus asserted a constitutional violation curable only through additional process, consistent with § 241.8(b). We therefore must, and do, adjudicate the merits of that assertion.

.Judge Tallman's contrary reading of the I-213 addendum interpolates words found nowhere in the actual language. Compare 1-213 *880 Form addendum (Villa “served 156 days confinement in federal custody for violation of 8 USC 1326(a)”), with Dissent at 886-87 n. 4 (concluding that "the officer noted Villa had been detained for 156 days awaiting trial on the charge that he violated § 1326....’’ (emphases added)). Just as we assume in other contexts that "a reasonably competent public official should know the law,” Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), we also assume that immigration officials know the legal difference between serving time for a particular violation and awaiting trial.

. Once ICE complies with these constitutional requirements, it may exercise its lawful discretion however it sees fit. In this sense, we agree with our dissenting colleague that the agency need not "reach a different result” on remand. Dissent at 28.

. See, e.g., Chew v. Colding, 344 U.S. 590, 597-98, 73 S.Ct. 472, 97 L.Ed. 576 (1953) ("Although Congress may prescribe conditions for [an alien’s] expulsion and deportation, not even Congress may expel him without allowing him a fair opportunity to be heard.”); Yamataya v. Fisher, 189 U.S. 86, 101, 23 S.Ct. 611, 47 L.Ed. 721 (1903) ("[I]t is not competent for ... any executive officer ... arbitrarily to cause an alien who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here, to be taken into custody and deported without giving him all opportunity to be heard upon the questions involving his right to be and remain in the United States.”); cf. Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 211, 73 S.Ct. 625, 97 L.Ed. 956 (1953) ("[Alliens who have once passed through our gates, even illegally, may be ex *881 pelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.”).

. The dissent marshals Heckler v. Chaney, 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), to dispute the existence of any cognizable liberty interest "in how an agency exercises its purely discretionary decision on whether to prosecute.” Dissent at 885. Heckler, however, held only that an administrative agency's decision not to act was unreviewable under 5 U.S.C. § 701(a)(2), explaining "when an agency refuses to act it generally does not exercise its coercive power over an individual’s liberty or property,” and thus leaves the courts with little to review. Heckler, 470 U.S. at 832, 837-38, 105 S.Ct. 1649. In contrast, where, as here, an agency has taken or is proposing to take action, "that action itself provides a focus for judicial review.” Id. at 832, 105 S.Ct. 1649. Heckler thus does not relieve the courts of their duty to review the constitutionality of agency action, whether discretionary or otherwise, when called upon to do so.