**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0882n.06

No. 14-3130

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 21, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ELISEO OVALLE-RUIZ, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON PETITION FOR REVIEW |
| | ) | OF A FINAL ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ERIC H. HOLDER, JR., United States | ) | |
| Attorney General, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

**BEFORE: NORRIS, MOORE, and GIBBONS, Circuit Judges**

**KAREN NELSON MOORE, Circuit Judge.** Immigration officers arrested Petitioner Eliseo Ovalle-Ruiz for being in the United States unlawfully and, that same day, reinstated a prior order of removal from December 2001. In this appeal, Ovalle-Ruiz contests the government's reinstatement of the December 2001 removal order, arguing that reinstatement was improper because the underlying removal order violated his due process rights and because immigration officers failed to exercise properly their discretion by reinstating the prior removal order without first considering factors favorable to Ovalle-Ruiz. Because we do not have jurisdiction to review the underlying removal order and because immigration officers did not improperly reinstate the removal order, we **DENY** Ovalle-Ruiz's petition for review.

## I.  FACTUAL AND PROCEDURAL HISTORY

Eliseo Ovalle-Ruiz is a native and citizen of Mexico.  Administrative Record ("A.R.") at 8 (Form I-213 at 2).  On December 17, 2001, immigration authorities apprehended Ovalle-Ruiz for being in the United States unlawfully and notified him that he was subject to removal pursuant to Immigration and Nationality Act § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i).  A.R. at 18 (Notice to Appear at 1); A.R. at 16 (Stipulated Req. for Removal Ord. and Waiver of Hr'g at 4).  That same day, Ovalle-Ruiz signed a Stipulated Request for Removal Order and Waiver of Hearing ("Stipulated Request") in which Ovalle-Ruiz agreed, among other things, that by signing the Stipulated Request:  he would be promptly removed from the United States; he waived his right to counsel, to appear before an immigration judge, and to appeal; he read the document in Spanish and understood its consequences; and he requested removal "voluntarily, knowingly, and intelligently."  A.R. at 13–17 (Stipulated Req. for Removal Ord. and Waiver of Hr'g at 1–5).  The Stipulated Request was written in English and Spanish.  Ovalle-Ruiz also signed a form titled "Notificación De Derechos," or "Notice of Rights," which set forth in Spanish that he had a right to a hearing, to contact an attorney, and to communicate with diplomatic officers.  A.R. at 20 (Notificación De Derechos); *see also* Respondent Br. Addendum (Notice of Rights).  Ovalle-Ruiz initialed the box on the form indicating that he was in the United States illegally, he gave up his right to a hearing, and he wished to be returned to Mexico. *Id.*  Without holding a hearing, an immigration judge granted the Stipulated Request and ordered

Ovalle-Ruiz removed to Mexico on December 27, 2001. A.R. at 11 (Order Granting Stipulated Removal).

Over the next two years, Ovalle-Ruiz was arrested by immigration authorities three more times for illegally entering the United States. A.R. at 9 (Form I-213 at 2). The government allowed Ovalle-Ruiz to return voluntarily to Mexico following two arrests in the fall of 2002. *Id*. But, after his arrest in March 2004, the government notified Ovalle-Ruiz that it intended to reinstate the December 2001 removal order rather than grant a voluntary return. A.R. at 24 (Not. of Intent/Decision to Reinstate Prior Ord.). On March 18, 2004, Ovalle-Ruiz declined to make a statement contesting the government's decision to reinstate the December 2001 removal order, *id*., and he was removed to Mexico.

On January 17, 2014, immigration officers again apprehended Ovalle-Ruiz. Ovalle-Ruiz told immigration officers that he is married and has a child who is a U.S. citizen but admitted that he was in the United States illegally. A.R. at 8–9 (Form I-213 at 1–2). The government notified Ovalle-Ruiz that it intended to again reinstate the December 2001 removal order. A.R. at 1 (Not. of Intent/Decision to Reinstate Prior Ord.). Ovalle-Ruiz was informed that he could contest the government's decision to reinstate the prior removal order to an immigration officer. *Id*. But rather than do so, Ovalle-Ruiz wrote "Refused to Sign" on the form asking whether he wished to make a statement contesting the government's determination. *Id*. In response to his January 17, 2014 arrest, the government also filed a criminal complaint against Ovalle-Ruiz for illegal reentry pursuant to 8 U.S.C. § 1326, and a grand jury indicted him on that charge. Shortly

3

after Ovalle-Ruiz filed a motion to dismiss the indictment, which attacked the constitutionality of the December 2001 removal order, the government also moved to dismiss the indictment. The district court granted the government's motion to dismiss.

Ovalle-Ruiz now appeals the government's decision to reinstate the December 2001 removal order.

## II. ARGUMENT

On appeal, Ovalle-Ruiz's main argument is that the government improperly reinstated the underlying December 2001 removal order because the removal order violated his due process rights. Ovalle-Ruiz argues that, because he could not speak or read English, he had difficulties reading Spanish, and the immigration judge did not inquire whether Ovalle-Ruiz knowingly and voluntarily waived his rights, the underlying removal order was fundamentally unfair. Ovalle-Ruiz also argues that the government failed to provide him an opportunity to submit evidence challenging the lawfulness of the underlying removal order and did not properly exercise its discretion prior to reinstating the order. In response, the government asserts that we do not have jurisdiction to address the underlying removal order and immigration officers properly reinstated the prior removal order.

First, we agree with the government that we do not have jurisdiction to review the December 2001 removal order. We have jurisdiction to review final orders of removal, and we treat reinstatement orders the same as removal orders for purposes of our jurisdiction. 8 U.S.C. § 1252(a)(5); *Villegas De La Paz v. Holder*, 640 F.3d 650, 653 (6th Cir. 2010). Generally, a

4

"prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). But, through 8 U.S.C. § 1252, Congress created an exception to this jurisdictional limitation, which states: "Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D). Thus, "§ 1252(a)(2)(D) re-vests the circuit courts with jurisdiction over constitutional claims or questions of law raised in the context of reinstatement proceedings." *Villegas*, 640 F.3d at 656.

Ovalle-Ruiz would have us end the jurisdictional inquiry here. But the language in § 1252(a)(2)(D) contains a relevant limitation—it makes clear that our jurisdiction to review "constitutional claims or questions of law" in removal proceedings is not cabined by "subparagraphs (B) and (C)" in § 1252(a)(2) or "any other provision of this chapter (*other than this section*)." 8 U.S.C. § 1252(a)(2)(D) (emphasis added). This means that "the savings clause in § 1252(a)(2)(D) permitting review of [constitutional or legal] claims does not apply to jurisdictional limitations *within* that section." *Juarez-Chavez v. Holder*, 515 F. App'x 463, 465 (6th Cir. 2013) (emphasis and alteration in original) (quoting *Cordova–Soto v. Holder*, 659 F.3d 1029, 1031 (10th Cir. 2011), *cert. denied,* —— U.S. ——, 133 S. Ct. 647 (2012)); *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1138 (9th Cir. 2008) ("Section 1252(a)(2)(D) does *not* apply to the jurisdictional limitations codified elsewhere in § 1252.") (emphasis in

original); *Hussain v. Keisler*, 505 F.3d 779, 784 (7th Cir. 2007) ("Section 1252(a)(2)(D) plainly states that other limitations on judicial review in 'this section'—that is, section 1252—still apply.").

This is important because § 1252 contains a number of jurisdictional limitations (other than in subparagraphs (B) and (C)). Relevant here, § 1252(b)(1) states that a petition to review an order of removal "must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). The thirty-day time limit is "both mandatory and jurisdictional." *Prekaj v. INS*, 384 F.3d 265, 267 (6th Cir. 2004) (internal quotation marks omitted). As a result, a petitioner "cannot collaterally attack the underlying order if he failed to seek review of that order in accordance with § 1252(b)(1)." *Juarez-Chavez*, 515 F. App'x at 466; *Verde-Rodriguez v. Attorney Gen. U.S.*, 734 F.3d 198, 202 (3d Cir. 2013) ("[T]he thirty-day time limit set forth in § 1252(b)(1) is not altered by § 1252(a)(2)(D)."). Here, Ovalle-Ruiz did not appeal the December 2001 removal order until he raised this challenge almost thirteen years later. We thus do not have jurisdiction to review the constitutionality of the underlying removal order. *See Juarez-Chavez*, 515 F. App'x at 466 (holding that the court had no jurisdiction to resolve the constitutionality of a reinstated 2006 stipulated removal order)[1]; *Cordova-Soto*,

---

[1]We noted in *Juarez-Chavez* that we do not preclude the possibility that an alien could raise a Suspension Clause challenge to § 1252(b)(1) "where the provision forecloses judicial review of an underlying removal order in a reinstatement proceeding; and where, either due to ineffective assistance of counsel or misconduct by government officials, the alien was prevented from challenging that underlying order and now is barred from reopening his removal proceedings (as a means to challenge that underlying order) because he is subject to reinstatement under § 1231(a)(5)." 515 F. App'x at 467. Ovalle-Ruiz does not raise such a

659 F.3d at 1032 ("[B]ecause Ms. Cordova–Soto failed to file her petition for review within thirty days of her 2005 removal order, we lack jurisdiction to review that order, including constitutional claims or questions of law."); *Verde-Rodriguez*, 734 F.3d at 202–03 (thirty-day clock starts at filing of original removal order not filing of reinstatement order).

We do have jurisdiction, however, to review a challenge to the reinstatement order. 8 U.S.C. § 1252(a)(5); *Villegas*, 640 F.3d at 653. Relying on *Villa-Anguiano v. Holder*, 727 F.3d 873 (9th Cir. 2013), Ovalle-Ruiz argues that immigration officers failed to exercise their discretion because they reinstated the December 2001 removal order without "consider[ing] all of the favorable and unfavorable factors relevant to the exercise of its discretion." Petitioner Br. at 23–25. In particular, Ovalle-Ruiz asserts that the government should have considered his marriage to a U.S. citizen, their five-year old U.S. citizen daughter, his lengthy residence in the U.S. without any real criminal history, and the dismissal of the illegal reentry indictment by the district court, in which Ovalle-Ruiz raised the due process violations that occurred during the underlying removal proceedings. *Id*. at 23–24 (citing *Villa-Anguiano*).

These arguments have no merit. If the government determines that an alien has illegally reentered after having been removed, the prior removal order "is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C.

---

challenge here. Moreover, as noted above, he failed to contest the government's decision to reinstate the same 2001 removal when he was previously removed in 2004. *See* A.R. at 24 (Not. of Intent/Decision to Reinstate Prior Ord.).

§ 1231(a)(5). The implementing regulations similarly state that an alien who illegally reenters after removal "*shall* be removed" by reinstating the prior order, and "[t]he alien has no right to a hearing before an immigration judge in such circumstances." 8 C.F.R. § 241.8(a) (emphasis added); *Villegas*, 640 F.3d at 655; *cf.* 8 U.S.C. § 1229a(b)(4) (describing an alien's rights in the original removal proceedings, including a right to counsel, to present evidence, and to cross-examine government witnesses, among others). Prior to reinstating a removal order, the government must simply "advise the alien that he or she may make a written or oral statement contesting the determination," and "consider whether the alien's statement warrants reconsideration of the determination."[2] 8 C.F.R. § 241.8(b).

Here, the government notified Ovalle-Ruiz that he could contest the government's decision to reinstate the December 2001 removal order, and Ovalle-Ruiz "Refused to Sign" the portion of the document indicating whether he would contest the decision. A.R. at 1 (Not. of Intent/Decision to Reinstate Prior Ord.). And he does not challenge the sufficiency of the above statutory scheme. Moreover, when Ovalle-Ruiz was previously given the opportunity to contest reinstatement of the December 2001 removal proceedings following his 2004 arrest, he expressly declined to do so. *See* A.R. at 24 (Not. of Intent/Decision to Reinstate Prior Ord.). In any event, although Ovalle-Ruiz now argues that the government failed to consider certain factors relevant

---

[2]The government must also determine whether the alien has been subject to a prior order of removal, identify the alien, determine whether the alien unlawfully reentered the United States, and provide written notice that the alien is subject to removal. 8 C.F.R. § 241.8(a)–(b). Ovalle-Ruiz does not argue that the government failed to satisfy these requirements.

to the reinstatement determination, he failed to put those factors before the government by challenging reinstatement of the prior removal order.[3]

Contrary to Ovalle-Ruiz's claim, *Villa-Anguiano* does not save his claim. In *Villa-Anguiano*, the court assessed whether reinstatement proceedings accorded the petitioner adequate due process after the petitioner successfully challenged the underlying removal order as part of a § 1326 prosecution. 727 F.3d at 876–77 n.1. In that case, the government notified the petitioner that it would reinstate a prior removal order, but before the actual removal, decided to prosecute the petitioner for illegal reentry. *Id*. at 876. In the illegal reentry proceedings, a district court found the underlying removal order invalid as a predicate for prosecution because Villa's due process rights were violated in the proceedings giving rise to the underlying removal order. *Id*. at 876–77. Then, the day after dismissal of the criminal complaint, the government reinstated the prior removal order without providing the petitioner an opportunity to raise this new evidence. *Id*. at 879. The Ninth Circuit rejected this approach, holding that when the government invites judicial scrutiny of an underlying removal order under § 1326, and "a district court finds constitutional infirmities in the prior removal proceedings that invalidate the prior removal for purposes of criminal prosecution, the agency cannot simply rely on a pre-prosecution determination to reinstate the prior removal order." *Id*. at 880.

---

[3]Notably, the record indicated that Ovalle-Ruiz is married and has a child who is a United States citizen, it included his limited criminal history and the length of time he had been in the United States, and an immigration officer certified that he reviewed this evidence. A.R. at 8–9 (I-213 Form at 1–2); A.R. at 1 (Not. of Intent/Decision to Reinstate Prior Ord.). So Ovalle-Ruiz's argument that the government failed to consider these factors has no merit. *See* Petitioner Br. at 23–24.

But that is not the case here. True, like *Villa-Anguiano*, the government initially attempted to prosecute Ovalle-Ruiz for illegal reentry, and Ovalle-Ruiz moved to dismiss the indictment on the ground that the underlying removal proceedings were unconstitutional. *See United States v. Ovalle-Ruiz*, 14-cr-20137, Dkt. No. 12 (E.D. Mich.).[4] But the government also moved to dismiss the indictment because "the ends of justice would best be served by this dismissal," *id*. at Dkt. No. 13, and the district court dismissed the indictment "for the reasons stated in the government's motion," *id*. at Dkt. No. 14. So, unlike *Villa-Anguiano*, the district court did not conclusively "invalidate the prior removal" because of "constitutional infirmities" and, no "facts found [or] [] legal conclusions reached in the course of the criminal case" bear on the underlying removal proceedings that were reinstated by the government here. *Villa-Anguiano*, 727 F.3d at 880. Consequently, Ovalle-Ruiz's challenge fails.

### III. CONCLUSION

Because we do not have jurisdiction to review the underlying removal order and because immigration officers did not improperly reinstate the removal order, we **DENY** Ovalle-Ruiz's petition for review.

---

[4]We take judicial notice of the criminal proceedings against Ovalle-Ruiz. *See Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 n.2 (6th Cir. 2012) ("We can take judicial notice of developments in related proceedings in other courts of record.") (internal quotation marks omitted).